OPINION
{¶ 1} Appellant, the Director of the Ohio Department of Job and Family Services ("ODJFS"), appeals the August 10, 2005 judgment of the Franklin County Court of Common Pleas reversing the decision of the Unemployment Compensation Review Commission ("commission"). This appeal involves the question of whether appellee, Jefferson Medical Associates, L.L.C. ("Jefferson Medical"), qualifies as a successor in interest to its predecessor's business for the purposes of inheriting the predecessor's contribution rate to the state unemployment fund. The trial court found that Jefferson Medical satisfied the statutory requirements to become a successor in interest and ordered the commission to assess a contribution rate consistent with that finding. For the reasons that follow, we affirm.
 {¶ 2} The Ohio General Assembly created and codified Ohio's unemployment compensation system in Revised Code Chapter 4141. Pursuant to R.C. 4141.09, every employer in the state must make contributions to the unemployment compensation fund. In addition to maintaining a separate account for each employer in the system, the director of ODJFS must determine each employer's contribution rate. R.C. 4141.24 and 4141.25.
 {¶ 3} The director may assign a standard rate of contribution or an experience rate, either of which is expressed as a percentage of the employer's adjusted payroll. R.C. 4141.25 sets the standard contribution rate at 2.7 percent. If an employer qualifies for an experience-based contribution, the rate is calculated according to a statutory formula that considers the positive or negative balance of the employer's account. The experience-based rate can lessen or increase an employer's obligation, with contribution rates set between .1 and 6.5 percent.
 {¶ 4} The Jefferson Geriatric and Rehabilitation Center is a Medicare and Medicaid certified long-term care nursing home located in northeastern Ohio. Jefferson Geriatric Center, Ltd. ("Geriatric") owned and operated the center from 1985 through May 31, 2001. After operating the center for approximately 15 years, Geriatric's unemployment account showed a positive balance of $165,188.20. For the reporting year beginning January 1, 2001, ODJFS set Geriatric's experience-based contribution rate at .6 percent.
 {¶ 5} Effective June 1, 2001, Geriatric and Jefferson Medical entered into a lease agreement, by which the center was transferred to Jefferson Medical. The assets transferred by the lease included the real property, the nursing home facility — including, without limitation, the license, operating rights and certain contracts, equipment and assets associated with the operation of the facility — all other structures, improvements, furniture, equipment, and business rights associated with the premises. For the duration of the lease, Jefferson Medical assumed responsibility for all improvements, maintenance and property taxes. The contract transferred possession and control of the premises for an initial term of ten years with two options for five years, or an additional ten years total. In May 2001, Jefferson Medical filed a "Report to Determine Liability" with ODJFS. In a "Determination of Employer Liability" mailed July 6, 2001, ODJFS notified Jefferson Medical that it did not qualify as a successor in interest to Geriatric. Therefore, ODJFS assigned the standard contribution rate of 2.7 percent. On July 30, 2001, Jefferson Medical appealed ODJFS' determination.
 {¶ 6} In addition to its letter of appeal, Jefferson Medical submitted a joint "Application for Voluntary Successorship: Transfer of Substantially All Assets" with Geriatric. The application listed the value of Geriatric's total assets as $10,250,000 and the total value acquired by Jefferson Medical as $9,760,000. A letter sent on the same day further informed ODJFS that it retained 100 percent of the employees working at the center, all of whom began work for Jefferson Medical immediately after the transfer from Geriatric.
 {¶ 7} On September 14, 2001, ODJFS denied the request for successor in interest status because the application indicated that Jefferson Medical received less than 90 percent of Geriatric's assets in the transfer. Jefferson Medical appealed the determination. On September 19, 2001, ODJFS mailed the director's reconsidered decision, which affirmed the determination that Jefferson Medical did not qualify as a successor in interest. The director stated that Jefferson Medical was correctly assigned the standard contribution rate of 2.7 percent.
 {¶ 8} On October 17, 2001, Jefferson Medical filed an application for reconsideration and a request for a hearing before the commission. At the November 4, 2002 hearing, the state submitted information from the Ashtabula County Auditor indicating that the tax value of the leased real property was $1,536,700. The state argued that, because the land was leased and not purchased, its value should be deducted from the total value of transferred assets, resulting in less than "substantially all" of the assets being transferred.
 {¶ 9} On February 9, 2004, the commission affirmed the director's determination. The commission concluded that a lease of real estate is not a transfer of ownership. Thus, the value of the property could not be considered in calculating the percentage of assets transferred.
 {¶ 10} On March 10, 2004, Jefferson Medical filed an appeal of the commission's decision with the Franklin County Court of Common Pleas pursuant to R.C. 4141.26(D). On September 8, 2004, the trial court issued an entry remanding the matter to the commission to take additional evidence regarding whether a lease is considered to be a transfer under R.C. 4141.24(F) and applicable sections of the Ohio Administrative Code. The commission held a hearing on March 22, 2005, after which it reaffirmed its decision that Jefferson Medical was not a successor in interest. On April 22, 2005, a transcript of the supplemental hearing and the commission's decision were filed with the trial court.
 {¶ 11} On August 9, 2005, the trial court reversed the commission's decision and entered judgment in favor of Jefferson Medical. The court found that Jefferson Medical satisfied the statutory requirements to become a successor in interest. Therefore, the trial court ordered that ODJFS grant Jefferson Medical status as Geriatric's successor and the experience-based contribution rate accordingly. ODJFS filed a timely appeal.
 {¶ 12} Appellant raises a single assignment of error:
THE FRANKLIN COUNTY COURT OF COMMON PLEAS ERRED IN FINDING THAT A LEASE OF ASSETS QUALIFIES A LEESEE [sic] CORPORATION AS A SUCCESSOR IN INTEREST.
 {¶ 13} Generally, an appellate court applies an abuse of discretion standard when reviewing an order of an administrative agency. However, the trial court's decision is based upon a question of law — whether a lease can be categorized as a transfer or acquisition, as those terms are used in R.C.4141.24(F) and pertinent Ohio Administrative Code provisions. Questions of law do not involve the exercise of discretion. Accordingly, our review is plenary. Childs v. Oil Gas Comm.
(Mar. 28, 2000), Franklin App. No. 99AP-626, citing Univ. Hosp.,Univ. of Cincinnati College of Medicine v. State Emp. RelationsBd. (1992), 63 Ohio St.3d 339.
 {¶ 14} R.C. 4141.24(F) provides three ways in which an employer may qualify for successor in interest status. The statute reads, in pertinent part:
If an employer transfers the employer's business or otherwise reorganizes such business, the successor in interest shall assume the resources and liability of such employer's account, and continue the payment of all contributions or payments in lieu of contributions, due under this chapter. If an employer acquires substantially all of the assets in a trade or business of another employer, or a clearly segregable and identifiable portion of an employer's enterprise, and immediately after the acquisition employs in the employer's trade or business substantially the same individuals who immediately prior to the acquisition were employed in the trade or business or in the separate unit of such trade or business of such predecessor employer, then, upon application to the director signed by the predecessor employer and the acquiring employer, the employer acquiring such enterprise is the successor in interest. * * *
Id. Jefferson Medical contends, and the trial court found, that it qualifies as a successor in interest because it acquired substantially all of the Geriatric's assets.
 {¶ 15} To qualify as a successor in interest under this method, an employer must satisfy three distinct requirements. The successor must (1) acquire substantially all of the predecessor's assets, (2) immediately employ substantially the same individuals who were employed by the predecessor immediately prior to the acquisition, and (3) file, jointly with the predecessor, an application for successor in interest status. In re LordBaltimore Press (1965), 4 Ohio St.2d 68; WLS Stamping Co., Inc.v. Admr., Ohio Bur. of Emp. Servs. (Dec. 14, 1993), Franklin App. No. 93AP-278. These prerequisites are mirrored in Ohio Adm. Code 4141-17-03, which provides, in pertinent part:
The transfer of substantially all of the assets of an ongoing business will result in the transferee becoming a successor in interest if all of the following requirements are satisfied: Ninety per cent or more of the assets of the transferor's business are transferred to the transferee;
Immediately after the acquisition, the transferee employs ninety per cent or more of the same individuals who immediately prior to the transfer were employed in such business; and
An application signed by the transferor and the transferee requesting that the transferee be made a successor in interest is submitted to the director [in a timely manner]. * * * Ohio Adm. Code 4141-17-03(A).[1]
 {¶ 16} The parties do not dispute that Jefferson Medical satisfies the last two conditions. Jefferson Medical retained at least 90 percent of Geriatric's employees and filed the appropriate documentation within the allotted time. Accordingly, we need only determine whether 90 percent or more of Geriatric's assets were transferred to Jefferson Medical. More specifically, we must determine whether a lease is a transfer under R.C.4141.24(F) and Ohio Adm. Code 4141-17-03.
 {¶ 17} The word "transfer" is not statutorily defined within Revised Code Chapter 4141. Undefined terms must be accorded their common, everyday meaning. MP Star Financial, Inc. v. ClevelandState University, 107 Ohio St.3d 176, 2005-Ohio-6183, ¶ 8. R.C.4141.24(F) uses the verb form of the word transfer, while the Administrative Code provision uses the term in both its verb and noun forms. Black's Law Dictionary (8th Ed. 2004) provides two possible definitions for the former: "to convey or remove from one place or one person to another; to pass or hand over from one to another, [especially] to change over the possessionor control of" and "to sell or give." (Emphasis added.) Likewise, "acquire" means "to gain possession or control of; to get or obtain." Id. The noun "transfer" denotes "any mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money, release, lease, or creation of a lien or other encumbrance" or "a conveyance of property or title from one person to another." Id. (Emphasis added.)
 {¶ 18} In turn, the Ohio Supreme Court has defined a lease as:
* * [A] conveyance by the owner of an estate in land of a portion of the owner's interest therein to the lessee for a term less than the owner's own, and it passes a present interest in the land. Such a conveyance for a consideration constitutes a sale of an "interest in real estate."
 {¶ 19} Brenner v. Spiegle (1927), 116 Ohio St. 631, syllabus. In other words, a lease is "a conveyance of an estate in real property for a limited term, with conditions attached, in consideration of rent." Vorhees v. Jovingo, Athens App. 04CA16,2005-Ohio-4948, ¶ 25, citing Cuyahoga Metropolitan Housing Auth.v. Watkins (1984), 23 Ohio App.3d 20, 23. As stated by the First District Court of Appeals, "[t]he critical and the only indispensable elements of a lease of an interest in real property are the rights to exclusive possession of a certain quantity of land for a term certain * * * [with] the right to physicalcontrol at the exclusion of others." Cuvier Press Club v.Fourth Race Street Associates, Ltd. (1981), 1 Ohio App.3d 30,34. (Emphasis added.)
 {¶ 20} A comparison of the above definitions reveals that a lease falls within the common meaning of term transfer. A brief look to other chapters of the Revised Code also supports the conclusion that a lease is a manner of transfer. For example, Ohio's Uniform Fraudulent Transfer Act defines transfer as "every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes * * * [a] lease * * *." R.C.1336.01(L). Additionally, under Ohio sales tax law, a lease is defines as "any transfer of the possession or control of tangible personal property for a fixed or indefinite term, for consideration." R.C. 5739.01(UU)(1). It is equally apparent that one may acquire — gain possession or control of — assets through a lease.
 {¶ 21} Still, appellant argues that only an outright purchase of business assets amounts to the transfer or acquisition required for successor in interest status. In its brief, appellant contends that an outright purchase is the only way in which courts have permitted an employer to become a successor in interest. In support of this position, appellant proffers cases from the Ohio Supreme Court, as well as one from this court, which equated the necessary transfer with a purchase.
 {¶ 22} An examination of appellant's assertion reveals its inherent flaws. This is a case of first impression: no other Ohio court has been asked to pass judgment as to whether a lease of substantially all business assets qualifies the lessee for successor in interest status under R.C. 4141.24(F) and Ohio Adm. Code 4141-17-03. The cases cited by appellant do not stand for the proposition that only an outright purchase qualifies as a transfer. Instead, the cases inquired into the quantity of assets transferred.
 {¶ 23} For example, in Apex Smelting Co. v. Cornell, Adm.
(1955), 164 Ohio St. 369, the Ohio Supreme Court denied automatic successor in interest status because Apex did not acquire the entire business of the seller. That the business transaction happened to be a purchase had no apparent bearing on the court's conclusion; the crucial factor was that the full extent of the predecessor's assets were not transferred. The same is true of our previous holding in Kate Corp. v. Ohio Unemp. Comp. ReviewComm., Franklin App. No. 03AP-315, 2003-Ohio-5668. There, we recognized Kate Corp. as a successor in interest because "[t]he purchase of all the assets of a business constitutes the transfer of the business for purposes of R.C. 4141.24(F)." Id. at ¶ 13. Again, the business transaction between the two entities was a purchase, but that was not the dispositive issue. Under R.C.4141.24(F), the question is whether all or substantially all of a business's assets are transferred, not the manner of that transfer.
 {¶ 24} Appellant's argument that neither the statute nor the regulation mention a lease or equate a lease with a purchase is also misplaced. Just as the statute and code provisions never refer to a lease, they do not contain the word "purchase." Instead, the legislature chose to use various deviations of the words "transfer" and "acquire." We must presume that if the legislature or relevant administrative agency had intended to confer successor in interest status upon an outright purchase of assets, it would have used more constrictive terminology.
 {¶ 25} As the pertinent provisions currently read, there is nothing in the statute to indicate that the legislature or responsible agency intended to limit the availability of successor in interest status to entities that purchased the assets of their predecessors. It is not the place of this court to impose a different interpretation by implementing an unnecessarily narrow interpretation of what constitutes a transfer or acquisition. Accordingly, under the facts of this case, we must conclude that the lease by which Jefferson Medical acquired exclusive possession and control over Geriatric's business and real property qualifies as a transfer of those assets under R.C. 4141.24(F).
 {¶ 26} Based on the foregoing, we overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Sadler and French, JJ., concur.
[1] We quote from the version of Ohio Adm. Code 4141-17-03 that was in effect when the lease was executed. The provision has been revised and now requires only 75 percent or more of the assets of the transferor's trade or business be transferred to the transferee.