SHERWIN-WILLIAMS COMPANY ET AL. *v.* DAYTON FREIGHT LINES, INC. ET AL., APPELLEES; VILLAGE OF LEWISBURG, APPELLANT.

[Cite as *Sherwin–Williams Co. v. Dayton Freight Lines, Inc.,* 112 Ohio St.3d 52, 2006-Ohio-6498.]

(Nos. 2005–1194 and 2005–1247—Submitted April 26, 2006—Decided December 27, 2006.)

PFEIFER, J.

### Factual and Procedural Background

{¶ 1} On the evening of February 7, 2000, a multiple-vehicle accident occurred on Interstate 70 near the Lewisburg exit. Appellees are 19 individuals or entities involved in litigation relating to the accident. Those involved in the accident claimed that a mixture of fog and smoke had created visibility problems that night. Whence came the smoke? Appellees claim that it came from the property of appellant, the village of Lewisburg.

{¶ 2} Earlier on the day of the accident, in an area behind the village's water plant, Lewisburg employees were burning scrap lumber, tree limbs, and discarded Christmas trees. The burn piles were located approximately 2,000 feet north of Interstate 70. Around 3:30 that afternoon, Lewisburg employees covered the burn piles with dirt and left the area. At 10:51 that evening, the Preble County Sheriff's Office received a complaint about smoke in the location of the earlier burning. Firefighters responding to the scene found four or five piles of smoldering brush. One firefighter testified that smoke from the piles hung close to the ground and moved south toward the interstate.

{¶ 3} Whether the smoke wound its way toward I–70 and combined with fog to create conditions that caused the accident is not before us today. Appellees did assert that the smoke contributed to the accident and brought claims against the village, but the Montgomery County Court of Common Pleas (in which eight separate claims were consolidated) concluded by summary judgment that Lewis-

burg was immune from liability pursuant to the version of R.C. 2744.02 in effect at the time of the accident, Am.Sub.S.B. No. 221, 145 Ohio Laws, Part II, 2211, 2215 ("S.B. 221"). Although former R.C. 2744.02 was amended twice after S.B. 221 was enacted and before the date of the accident, both of those amendments were held to be invalid by this court. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062; *Stevens v. Ackman* (2001), 91 Ohio St.3d 182, 743 N.E.2d 901.

{¶ 4} The trial court found that Lewisburg's actions fell under the general immunity from civil liability granted to political subdivisions in former R.C. 2744.02(A)(1) and further found that none of the exceptions to immunity contained in former R.C. 2744.02(B) operated to except Lewisburg from that general immunity.

{¶ 5} The Montgomery County Court of Appeals reversed the trial court. The appellate court held that the exception to sovereign immunity contained in former R.C. 2744.02(B)(3), which made political subdivisions liable for injuries "caused by their failure to keep * * * public grounds within the political subdivision * * * free from nuisance," applied. The trial court had held that since the accidents did not occur on village property, former R.C. 2744.02(B)(3) did not apply.

{¶ 6} The appellate court certified that its decision conflicted with the decision in *Kareth v. Toyota Motor Sales* (Sept. 28, 1998), Clermont App. No. CA 98–01–011, 1998 WL 667845. This court granted jurisdiction by accepting a discretionary appeal and by certifying that a conflict over the following question exists:

{¶ 7} "Under the former R.C. 2744.02(B)(3), is a political subdivision liable for injury, death, or loss resulting from a nuisance that exists on public grounds within the political subdivision where the injury, death, or loss caused thereby occurs outside the political subdivision?" 106 Ohio St.3d 1502, 2005-Ohio-4605, 833 N.E.2d 1245.

## Law and Analysis

{¶ 8} Former R.C. 2744.02(A)(1) provided immunity to political subdivisions from civil liability for injuries or losses it or its employees caused. Former R.C. 2744.02(B) provided exceptions to that statutorily granted immunity. This case deals with the exception set forth in former R.C. 2744.02(B)(3), which stated:

{¶ 9} "[P]olitical subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep * * * public grounds within the political subdivision open, in repair, and free from nuisance." S.B. 221, 145 Ohio Laws, Part II, at 2216.

{¶ 10} To answer the certified question before us, we must assume that Lewisburg's burning of refuse on its property did create a nuisance that did contribute to the accident of February 7, 2000. No one disputes the fact that the

accident did not occur on village property. We must determine whether the fact that the injuries and losses associated with the accident were not suffered on Lewisburg's property renders the former R.C. 2744.02(B)(3) exception to immunity inapplicable.

{¶ 11} We dealt with a similar issue of statutory interpretation regarding an R.C. 2744.02(B) immunity exception in *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543. In *Hubbard*, plaintiffs alleged that the Canton City School Board of Education had been negligent in supervising and retaining a teacher who had allegedly sexually assaulted their daughters inside a city school. The plaintiffs argued that former R.C. 2744.02(B)(4) created an exception from immunity for the board. That statute provided:

{¶ 12} "[P]olitical subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function." S.B. 221, 145 Ohio Laws, Part II, at 2216.

{¶ 13} The board asserted that former R.C. 2744.02(B)(4) was limited to claims arising from negligence related to physical defects within or on the grounds of governmental buildings.

{¶ 14} The court applied in *Hubbard* our long-standing rule concerning statutory interpretation that "where the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom." *Hubbard*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 14. In interpreting the statute, this court held that "[t]he plain language of the subsection supports the conclusion that the General Assembly intended to permit political subdivisions to be sued in all cases where injury results from the negligence of their employees occurring within or on the grounds of any government building." Id. at ¶ 13. This court concluded that "[t]he exception is not confined to injury resulting from physical defects or negligent use of grounds or buildings." Id. at ¶ 18.

{¶ 15} As was true in *Hubbard*, our first duty in interpreting former R.C. 2744.02(B)(3) is to determine whether it is clear and unambiguous. "If it is ambiguous, we must then interpret the statute to determine the General Assembly's intent. If it is not ambiguous, then we need not interpret it; we must simply apply it." *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 13.

{¶ 16} In short, former R.C. 2744.02(B)(3) provided that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep * * * public grounds within the political subdivisions * * * free from

nuisance." Immunity is lost, according to the plain language of the statute, when a political subdivision fails to keep its public grounds free from nuisance and an injury results from that failure. The statute makes only one factor regarding the injury relevant—that it is caused by the nuisance. There is no requirement that the injury must also occur on the property of the political subdivision. There is only a requirement that the *nuisance* arise on public property. Former R.C. 2744.02(B)(3) is not ambiguous; to interpret it as Lewisburg urges would require this court to add language to the statute.

{¶ 17} Former R.C. 2744.02(B)(4) demonstrates that the General Assembly is perfectly capable of limiting the reach of a political subdivision's liability to injuries or losses that occur on property within the political subdivision; as this court held in *Hubbard,* pursuant to former R.C. 2744.02(B)(4) political subdivisions were liable for employee negligence that occurred in public buildings or on their grounds. The General Assembly made no such attempt to limit to public areas the geographical reach of R.C. 2744.02(B)(3).

{¶ 18} The court of appeals decision in this case conflicts with the decision of the court in *Kareth,* Clermont App. No. CA98–01–011, 1998 WL 667845. *Kareth* concerned an accident that occurred near the intersection of State Route 133 and Twin Bridges Road, a county road in Clermont County. The plaintiff alleged that as a result of the county's failure to keep Twin Bridges Road free from nuisance, surface water drained onto or across State Route 133, creating a hazardous condition that caused the accident. The plaintiff argued that even though the accident had occurred on state property, the county was responsible for the nuisance that caused the accident.

{¶ 19} *Kareth* states, "The Supreme Court of Ohio has 'refused to extend a political subdivision's liability to areas outside its territorial limits' reasoning that the political subdivision lacks possession and control of such areas. *Simpson v. Big Bear Stores Co.* (1995), 73 Ohio St.3d 130, 133, 652 N.E.2d 702, citing *Ruwe v. Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St.3d 59, 29 OBR 441, 505 N.E.2d 957; *Mitchell v. Cleveland Elec. Illum. Co.* (1987), 30 Ohio St.3d 92, 30 OBR 295, 507 N.E.2d 352."

{¶ 20} *Kareth* mischaracterizes this court's earlier holdings. In *Simpson,* the plaintiff sued Big Bear for injuries she suffered when she was attacked in a parking lot adjacent to a Big Bear store; the lot was not owned by or under the control of Big Bear. *Simpson* in no way involved sovereign immunity, but this court cited sovereign-immunity cases in *Simpson* to illustrate the requirement of an owner's possession and control of the property in premises-liability cases.

{¶ 21} In both *Ruwe,* 29 Ohio St.3d 59, 29 OBR 441, 505 N.E.2d 957, and *Mitchell,* 30 Ohio St.3d 92, 30 OBR 295, 507 N.E.2d 352 (both of which arose from accidents that occurred prior to the enactment of R.C. Chapter 2744) the

nuisances arose outside of the political subdivision and were not caused by employees of the political subdivision. In *Ruwe*, an accident occurred when a muffler lying in the roadway was catapulted by one car into the windshield of another car. Evidence established that the muffler had been in or near the roadway in Wyoming, Ohio, for less than 90 minutes. However, the muffler had lain in the roadway just outside the corporation limits of Wyoming for at least 24 hours. The plaintiffs sought to charge the city with constructive notice of the presence of the muffler for the time that it was close to but not within the city limits. This court recognized that municipal corporations must keep public highways and streets *within* their municipality free from nuisance, but "refuse[d] to place the additional burden of inspecting and maintaining the highways and streets of neighboring jurisdictions on a municipality," *Ruwe*, 29 Ohio St.3d at 61, 29 OBR 441, 505 N.E.2d 957. This court held that the city was not liable, because there was no evidence that the city had created the nuisance or had notice of it. Id. at 60, 29 OBR 441, 505 N.E.2d 957.

{¶ 22} Likewise, in *Mitchell*, the nuisance at issue was not created by the city or on city-owned property. In *Mitchell*, a father and son drowned while fishing in Lake Erie, 100 feet outside the city of Avon Lake. They had entered the lake at Miller Road Park, a city park. It was alleged that the Mitchells' drowning resulted from an undertow caused by the release of heated water from an electric-generating plant that was located within Avon Lake. The plant was not municipally owned. The plaintiff alleged that Avon Lake was negligent because it was aware of the dangerous nature of the undertow but failed to erect fences, post warning signs, or take other measures in the park to inform persons of an alleged nuisance outside the park. This court refused to impose a duty "requiring a municipality to protect individuals from or warn them of dangers existing on property which is beyond its corporate limits or control." *Mitchell*, 30 Ohio St.3d at 95, 30 OBR 295, 507 N.E.2d 352.

{¶ 23} Thus, although it is true that this court in *Ruwe* and *Mitchell* declined to impose liability on political subdivisions for nuisances over which they had no control, this case is different. The property where the nuisance arose was under the control of Lewisburg. And Lewisburg employees allegedly caused the nuisance. Former R.C. 2744.02(B)(3) created an immunity exception for instances in which injury or loss was caused by a nuisance arising on public grounds; neither the language of former R.C. 2744.02(B)(3) nor our previous case law requires that the injury or loss also be suffered on public grounds in order for a political subdivision to be liable for damages.

{¶ 24} We thus answer in the affirmative the certified question "Under the former R.C. 2744.02(B)(3), is a political subdivision liable for injury, death, or loss resulting from a nuisance that exists on public grounds within the political

subdivision where the injury, death, or loss caused thereby occurs outside the political subdivision?" Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

Moyer, C.J., RESNICK, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

LUNDBERG STRATTON, J., dissents.

***

**LUNDBERG STRATTON, J., dissenting.**

{¶ 25} In my view, the village's liability for a nuisance within the political subdivision does not extend beyond the geographic limits of the political subdivision. Accordingly, for the reasons that follow, I dissent.

{¶ 26} In this case, appellees assert that smoke from a smoldering fire on the property of the village blew over an interstate outside of the village, combined with fog, and resulted in multiple car accidents. The majority holds that under former R.C. 2744.02(B)(3), a political subdivision is liable for injury, death, or loss resulting from a nuisance that exists on public grounds within the political subdivision when the injury, death, or loss caused thereby occurs outside the political subdivision.

{¶ 27} In my view, the focus of the analysis should be on whether the village had possession and control over the area where the accidents occurred, not whether the village had possession or control over the area where the nuisance originated. Because the accidents occurred in an area not under the possession or control of the village, I would reverse the judgment of the court of appeals and find that the village was immune from liability.

{¶ 28} In *Simpson v. Big Bear Stores Co.* (1995), 73 Ohio St.3d 130, 652 N.E.2d 702, a grocery store customer was physically attacked after she left the grocery, which was located in a shopping center. The customer sued the grocery store, and this court refused to extend liability to premises not in the possession and control of the business owner. I see no distinction between that case and the case at bar.

{¶ 29} In *Simpson,* this court held that "[i]t is fundamental that to have a duty to keep premises safe for others one must be in possession and control of the premises." Id. at 132, 652 N.E.2d 702, citing *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 26 OBR 160, 497 N.E.2d 1118.

{¶ 30} With regard to requiring control over the premises of the injury, this court noted: "The element of control has its origin at common law. *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 31 OBR 449, 510 N.E.2d 386. This element has been continually reiterated in our decisions and is

incorporated into the Restatement position.   * * * Under similar circumstances we have refused to extend a political subdivision's liability to areas outside its territorial limits, applying this same reasoning.   See *Ruwe v. Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St.3d 59, 29 OBR 441, 505 N.E.2d 957; *Mitchell v. Cleveland Elec. Illum. Co.* (1987), 30 Ohio St.3d 92, 30 OBR 295, 507 N.E.2d 352." *Simpson,* 73 Ohio St.3d at 133, 652 N.E.2d 702.   There is no evidence that the village had control over the interstate.

{¶ 31} In the conflict case, *Kareth v. Toyota Motor Sales* (Sept. 28, 1998), Clermont App. No. CA 98–01–011, 1998 WL 667845, the Twelfth District Court of Appeals held that a county was not responsible for an accident caused by a nuisance on a state highway, even though the source of the nuisance was on property within the control of the political subdivision.   The *Kareth* court held that the duty of a municipality to keep its public areas free from nuisance does not extend to property that is beyond its corporate limit or control.   Thus, "since a county does not have any control over state highways," the appellate court concluded, "the Commissioners do not have a duty under R.C. 2744.02(B)(3) to repair or protect others from a nuisance that exists on a state highway regardless of where the source of the nuisance is located."   I would adopt the sound reasoning of the *Kareth* court.

{¶ 32} The majority's interpretation means that the village can be held responsible for car accidents that did not happen within the village, but actually happened on a highway 2,000 to 3,000 feet outside the village in an area over which the village had no control.   The village had no authority to close the highway even if the village knew that the smoke would ultimately drift to the highway.   How far would the majority extend this liability?   Although the village created the smoke, it did not create the fog.   According to Lt. Peck, the fog extended to Huber Heights, approximately 20 miles east of the accident scene. And, clearly, the village had no control over the wind that carried the smoke and fog.

{¶ 33} I believe that the majority's interpretation of former R.C. 2744.02(B)(3) today runs afoul of legislative intent.   I would call upon the General Assembly to clarify this important issue.   I dissent.

---

Breidenbach, O'Neal & Bacon, Robert M. O'Neal, and Steven E. Bacon, for appellee Dayton Freight Lines.

Dyer, Garofalo, Mann & Schultz and Robert A. Burke, for appellees Ronald E. Tracy Jr. and Candace Tracy.

Freund, Freeze & Arnold and Patrick J. Janis, for appellees Gainey Transportation Services, Inc., Gainey Insurance Services, Inc., Richard D. Estes, and Heidi Boyd.

Richard M. Hunt Co., L.P.A., Richard M. Hunt, and Kevin M. Hunt, for appellees Richard D. Estes and Heidi Boyd.

James W. Gustin & Associates Co., L.P.A., and James W. Gustin, for appellant.