[Cite as *Bernard v. Unemp. Comp. Rev. Comm.*, 2012-Ohio-958.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MIAMI   COUNTY

| | | |
|---|---|---|
| CLAUDIA BERNARD | : | |
| | : | Appellate Case No. 2011-CA-16 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 11-72 |
| v. | : | |
| | : | |
| UNEMPLOYMENT COMPENSATION | : | (Civil Appeal from |
| REVIEW COMMISSION, et al. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellants | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of March, 2011.

. . . . . . . . . . .

ROBERT L. GUEHL, Atty. Reg. #0005491, Burton Law, LLC, 5540 Far Hills Avenue, Dayton, Ohio 45429
        Attorney for Plaintiff-Appellant, Claudia Bernard

MICHAEL DeWINE, by ROBERT A. JARVIS, Atty. Reg. #0069752, Ohio Attorney General's Office, 1600 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202-2809
        Attorney for Defendant-Appellee, Director, Ohio Dept. of Job and Family Services

W. ROGER FRY, Atty. Reg. #0009819, and WILLIAM H. FRY, Atty. Reg. #0079108, Rendigs, Fry, Kiely & Dennis, LLP, One West Fourth Street, Suite 900, Cincinnati, Ohio 45202-3688
        Attorneys for Defendant-Appellee, Wakeman Educational Foundation

. . . . . . . . . . . .

HALL, J.

{¶ 1} The issue presented here is whether the amount of pretax pay that an employee elects to place in a flexible spending account (FSA) for qualifying medical expenses constitutes "remuneration" under Ohio's unemployment compensation law. It is the Ohio Department of Job and Family Services's (ODJFS) position that it does not. Because the ODJFS is the agency charged with implementing and administering this law and because its interpretation is reasonable, we defer to it and affirm.

## I.

{¶ 2} Appellant Claudia Bernard worked as a caretaker for The Barry and Patricia Wakeman Educational Foundation until she was discharged in late 2009. In January 2010, Bernard applied to the ODJFS for unemployment benefits based on her employment with the Foundation during 2009. The ODJFS denied Bernard's application on the basis she was not eligible. Bernard appealed, and the ODJFS affirmed its decision.

{¶ 3} Bernard then appealed the ODJFS's decision to the Unemployment Compensation Review Commission (UCRC), which is independent of the ODJFS and reviews its unemployment compensation decisions. After a hearing, a UCRC hearing officer affirmed the ODJFS's decision. For a benefits application to be valid, Ohio's unemployment compensation law requires that the applicant be currently unemployed, that the applicant was employed during at least 20 weeks within the applicant's base period, and that the applicant's average weekly wage during those weeks was at least 27.5% of the statewide average weekly wage during the same period. *See* R.C. 4141.01(R)(1). The hearing officer determined that

Bernard's average weekly wage during her base period (January 1, 2009 to December 31, 2009) did not meet the statutorily required minimum. Bernard's average weekly wage needed to be at least $213, but the officer determined that it was only $125. "Average weekly wage" is defined by the unemployment compensation law as "the amount obtained by dividing an individual's total remuneration for all qualifying weeks during the base period by the number of such qualifying weeks." R.C. 4141.01(O)(2). The law's definition of "remuneration" is "all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash." R.C. 4141.01(H)(1). The hearing officer found that, in 2009, Bernard received $17,320 in compensation. Of that amount, she received $6,520 in cash, and she elected to place $900 each month ($10,800 total) in a flexible spending account for medical expenses, under a cafeteria plan set up for her by the Foundation.

{¶ 4} Cafeteria plans "are benefit plans under which all participants are employees who can choose from among cash and certain qualified benefits." Pub. 15-A, Employer's Supplemental Tax Guide (Revised January 2001). Such plans are governed by section 125 of the Internal Revenue Code. "Flexible spending accounts (FSAs) are employer-established benefit plans that reimburse employees for specified expenses as they are incurred. * * * FSAs and cafeteria plans are closely related, but not all cafeteria plans have FSAs and not all FSAs are part of cafeteria plans. FSA reimbursements funded through salary reduction agreements (the most common arrangement) are exempt from income and employment taxes under cafeteria plan provisions because employees have a choice between cash (their regular salary) and a nontaxable benefit." Report for Congress by the Congressional Review Service, Tax

Benefits for Health Insurance and Expenses: Overview of Current Law and Legislation, at 6 (Feb. 3, 2010). The plan set up for Bernard by the Foundation was intended to qualify as a section 125 cafeteria plan. Bernard paid for this benefit with pretax pay–the Foundation contributed nothing. So instead of receiving $900 each month in cash, this amount was put into the FSA. The benefit to Bernard of this arrangement was that she did not need to pay federal income or employment taxes on FSA amounts, nor did she pay taxes on the payments that she received from the FSA as reimbursements for qualified medical expenses.

{¶ 5} The hearing officer determined that Bernard's total remuneration in 2009 was the $6,520 in cash compensation. The officer determined that the amount that went into the FSA was not "remuneration." The Ohio unemployment compensation law expressly excludes from the definition of remuneration "payments as provided in divisions (b)(2) to (b)(16) of section 3306 of the 'Federal Unemployment Tax Act,' 84 Stat. 713, 26 U.S.C.A. 3301 to 3311, as amended.'" R.C. 4141.01(H)(1)(a). Division (b) of section 3306 defines "wages" as "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." But, certain remuneration is expressly excluded from the definition. It is some of these (those in (b)(2) to (b)(16)) to which the Ohio law is referring. Pertinent among them is the one described in division (b)(5)(G), which excludes "any payment made to, or on behalf of, an employee or his beneficiary * * * under a cafeteria plan (within the meaning of section 125) if such payment would not be treated as wages without regard to such plan and it is reasonable to believe that (if section 125 applied for purposes of this section) section 125 would not treat any wages as constructively received."

**{¶ 6}** With the amount that went into Bernard's FSA, her average weekly wage in 2009 was roughly $333, well over the required statutory minimum of $213. But without that amount, the average drops to $125, rendering her application invalid. So Bernard asked for review of her application by the full UCRC, but the UCRC declined to do so. Having exhausted her administrative remedies, Bernard appealed the hearing officer's decision to the Miami County Court of Common Pleas, arguing that the FSA amounts are "remuneration" under Ohio's unemployment compensation law. In July 2011, after a hearing, the trial court affirmed the hearing officer's decision.

**{¶ 7}** Bernard's appeal of the decision is now before this Court. The primary issue raised in the sole assignment of error is one of statutory construction: whether the amount that went into her FSA is "remuneration." We review not the trial court's decision but the UCRC's. *See Tzangeos, Plakas, & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 697, 1995-Ohio-206, citing R.C. 4141.282(H). We may reverse its decision "only if it is unlawful, unreasonable, or against the manifest weight of the evidence." *Id.* Here, though, because no material facts are disputed by the parties and the issue presented is a question of law, our review focuses on the lawfulness of the UCRC's interpretation of the Ohio unemployment compensation law. *See Fegatelli v. Ohio Bur. of Emp. Serv.*, 146 Ohio App.3d 275, 277 (2001).

## II.

**{¶ 8}** Appellant's argument concerns section 3306(b)(5)(G) of the Federal Unemployment Tax Act (FUTA). Specifically, the argument centers on the first qualification

to payments made under a cafeteria plan–"if such payment would not be treated as wages without regard to such plan." Appellant asserts that if the $900 had not gone into the FSA each month, it would have gone into her pocket as "wages," that is, "remuneration for employment," 26 U.S.C. 3306(b). This is not necessarily true. Division (b)(5)(G) describes payments "made to, or on behalf of, an employee or his beneficiary," section (b)(5), "*under* a cafeteria plan," (emphasis added) section (b)(5)(G). In other words, these are payments made *from* a cafeteria plan to an employee (or on behalf of the employee to his beneficiary) not payments *to* a cafeteria plan. This becomes clear when other subdivisions under division (b)(5) are considered that describe payments made not only "under" but "under or to." *See*, *e.g.*, Section 3306(b)(5)(B); 3306(b)(5)(D) ("under or to an annuity contract"); *see*, also, Section 3306(b)(5)(C) (describing payments, similar to division (b)(5)(G), "under a simplified employee pension"). While it is true that if Bernard had not elected to put $900 each month into the FSA, she would have received it as cash compensation, it is not technically correct to say that the payments Bernard received from the FSA were compensation. The payments that Bernard received from the FSA were to reimburse her for medical expenses.

{¶ 9} Still, it may reasonably be argued that reimbursements were, in essence, compensation–after all, it was Bernard's pay that went into the FSA each month. The question, then, is whether the exclusion of such amounts from the definition of "remuneration" was what the legislature intended. *See Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, at ¶12 ("When analyzing a statute, our primary goal is to apply the legislative intent manifested in the words of the statute."). When discerning the legislative intent of a law found within a legislative scheme, a court may rely on the expertise of the state

agency to which the legislature has delegated the scheme's enforcement. *Elyria Foundry Co. v. Pub. Util. Comm.*, 118 Ohio St.3d 269, 2008-Ohio-2230, at ¶13. Furthermore, a reviewing court should "give due deference to the director's 'reasonable interpretation of the legislative scheme' governing his agency." *Sandusky Dock Corp. v. Jones*, 106 Ohio St.3d 274, 2005-Ohio-4982, at ¶8, quoting *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282, 287 (2001); *McLean*, at 92 ("It is well-settled that courts, when interpreting statutes, must give due deference to an administrative interpretation formulated by an agency."), quoted in *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, at ¶26. The legislature has placed the responsibility to oversee and administer Ohio's unemployment compensation system with the ODJFS. *See* 2010 Ohio Atty.Gen.Ops. No. 2010-029. And its interpretation of "remuneration" under this legislative scheme is reasonable.

{¶ 10} The Internal Revenue Service (IRS) interprets section 3306(b)(5)(G) as excluding the amounts that an employee elects to place in an FSA for medical expenses under an employer's section 125 cafeteria plan. Neither the employer nor the employee pays FUTA taxes on such amounts–in fact, these amounts are subject to no employment taxes or income taxes. In Private Letter Rulings, the IRS has analyzed the federal tax consequences of an employer's providing a medical reimbursement benefit to employees through a section 125 cafeteria plan under which each employee would elect to reduce her salary to pay for the benefit. The IRS has concluded that generally, in addition to not being subject to federal income tax, none of the amounts by which an employee elects to reduce her compensation to pay for the medical expense reimbursement benefit, or the amounts available under the plan,

are "wages" for purposes of FUTA taxes. PLR 90-34-078 (Aug. 24, 1990); PLR 89-17-081 (April 28, 1989) (concluding that, "with respect to the federal employment taxes, provided the benefits under the Plan meet the requirements of [certain] sections * * * of the Code, amounts paid to, or on behalf of, a participant or the participant's dependents or beneficiaries under the Plan are not 'wages' for purposes of either section 3121 [the Federal Insurance Contribution Act (FICA)] or section 3306 of the Code." The IRS has expressed the same view in a Chief Counsel Advice memorandum: "Generally, qualified benefits under a cafeteria plan are not subject to FICA, FUTA, Medicare tax, or income tax withholding." C.C.A. 2001-17-038 (April 27, 2001). "Employers may also offer flexible spending accounts to employees under a cafeteria plan that provides coverage under which specified, incurred expenses may be reimbursed. These include health flexible spending accounts for expenses not reimbursed under any other health plan." *Id.* The memo explains that "employer contributions to the cafeteria plan are usually made pursuant to salary reduction agreements between the employer and the employee in which the employee agrees to contribute a portion of his or her salary on a pre-tax basis to pay for the qualified benefits. Salary reduction contributions are not actually or constructively received by the participant. Therefore, those contributions are not considered wages for federal income tax purposes." *Id.* Citing section 3121(a)(5)(G) and 3306(b)(5)(G), the memo also says that "those sums generally are not subject to FICA and FUTA." *Id.* Finally, two IRS tax guides say the same. *See* Pub. 15-A, Employer's Supplemental Tax Guide (Revised January 2001) ("Generally, qualified benefits under a cafeteria plan are not subject to social security, Medicare, and FUTA taxes, or income tax withholding."); IRS Pub. 969 (January 14, 2011) ("You contribute to your FSA by electing an amount to be voluntarily

withheld from your pay by your employer. This is sometimes called a salary reduction agreement. * * * You do not pay federal income tax or employment taxes on the salary you contribute * * * to the FSA.").

{¶ 11} According to the IRS, then, an employee's contributions to an FSA are not subject to federal unemployment compensation taxes. Nor are they subject to Ohio unemployment compensation taxes. Under the Ohio unemployment compensation law, an employer's tax liability is based on its average annual payroll. *See* R.C. 4141.25. The law defines "annual payroll," in part, as "the total amount of wages subject to contributions." R.C. 4141.01(J). And it defines "wages," in part, as "remuneration paid to an employee * * * with respect to employment." R.C. 4141.01(G)(1). As discussed above, Ohio excludes from the definition of "remuneration" payments under section 3306(b)(2)-(16). *See* R.C. 4141.01(H)(1)(a). Therefore, since section 3306(b)(5)(G) excludes an employee's FSA contributions from unemployment compensation taxes, they are also excluded from Ohio unemployment compensation taxes. This means that neither the federal or the state unemployment compensation system sets aside money to compensate unemployed individuals for their FSA contributions. It makes logical sense that if money placed in the cafeteria plan is not subject to unemployment tax, then that amount should not be considered for calculating whether the employee is eligible for unemployment benefits.

{¶ 12} Because the ODJFS's interpretation of Ohio's unemployment compensation law is reasonable, we defer to it. We hold that the UCRC's decision, and the decision of the trial court which is based on the same interpretation, is not unlawful or unreasonable.

{¶ 13} The sole assignment of error is overruled.

{¶ 14} The UCRC's decision is affirmed.

. . . . . . . . . . . . .

GRADY, P.J., concurs.

FAIN, J., dissenting:

{¶ 15} Judge Hall's opinion for the court lays out the intricacies of the interpretation of the statute with reference to the circumstances of this case with admirable skill, and I cannot usefully add to that exposition. It is apparent, though, that the proper interpretation of the statutory definition of remuneration as it applies to the flexible spending account in this case is anything but clear and unambiguous.

{¶ 16} The principle that a court should give deference to an administrative agency's interpretation of the legislative enactment that it is charged to administer is a general principle of statutory interpretation employed by courts. *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282, 287, 2001-Ohio-190, 750 N.E.2d 130. This principle finds statutory support in R.C. 1.49(F).

{¶ 17} The principle that Ohio's Unemployment Compensation Law shall be construed liberally in favor of the applicant is a specific rule of construction set forth in the Unemployment Compensation Law, itself, at R.C. 4141.46. *Vespremi v. Giles*, 68 Ohio App.2d 91, 93, 427 N.E.2d 30 (1st Dist. 1980).

{¶ 18} It is another principle of statutory construction that a special or local provision shall prevail as an exception to a general provision, where the two provisions are in conflict. This principle is codified at R.C. 1.51.

{¶ 19} Given the specific legislative commandment, in R.C. 4141.46, that the Ohio Unemployment Compensation Law should be liberally construed in favor of applicants for compensation, I would construe the statute in Bernard's favor and find her eligible to receive benefits.  She earned the moneys that were paid into a flexible spending account for her benefit, through her labor in her employer's behalf.  To me, interpreting those moneys as remuneration for purposes of determining her eligibility does not unduly stretch the bounds of the requisite liberal construction of the statute; in my view, that interpretation  lies within a reasonable, liberal construction of the statute in her favor.

{¶ 20} I would reverse the judgment of the trial court and remand with appropriate instructions.

. . . . . . . . . . . . .

Copies mailed to:

Robert L. Guehl
Michael DeWine
Robin A. Jarvis
W. Roger Fry
William H. Fry
Hon. Robert J. Lindeman