BERNARD, APPELLANT, *v.* UNEMPLOYMENT COMPENSATION REVIEW
COMMISSION; BARRY AND PATRICIA WAKEMAN EDUCATIONAL
FOUNDATION ET AL., APPELLEES.

[Cite as *Bernard v. Unemp. Comp. Rev. Comm.,* 136 Ohio St.3d 264,
2013-Ohio-3121.]

*R.C. 4141.28(H)—Agency's interpretation of ambiguous statute is lawful and reasonable—R.C. 4141.01—Earnings deposited into a flexible-spending account for reimbursement of medical costs under an employer's cafeteria plan do not qualify as remuneration for purposes of determining an employee's unemployment-compensation eligibility.*

(No. 2012-0717—Submitted April 9, 2013—Decided July 25, 2013.)

APPEAL from the Court of Appeals for Miami County, No. 2011-CA-16,
2012-Ohio-958.

_____

**LANZINGER, J.**

**{¶ 1}** In this case, we consider whether earnings deposited into a flexible-spending account for reimbursement of medical costs under an employer's cafeteria plan[1] qualify as remuneration for purposes of determining an employee's unemployment-compensation eligibility. We hold that they do not.

## I. Facts

**{¶ 2}** Until December 2009, appellant, Claudia Bernard, was employed as a property caretaker by appellee Wakeman Educational Foundation

_____

1. A cafeteria plan is a written benefit plan maintained by an employer for the benefit of its employees in which all participants are employees and each participant has the opportunity to select from among two or more benefits consisting of cash and qualified benefits. 26 U.S.C. 125(d)(1).

("Wakeman"). Bernard acknowledges that in 2009, she authorized Wakeman to deposit $900 of her monthly earnings into a flexible-spending account so that she could use that money to obtain tax-free reimbursement of medical expenses. Accordingly, in 2009, Wakeman deposited $10,800 of Bernard's $17,320 earnings into a flexible-spending account. After she was terminated from employment with Wakeman on December 31, 2009, Bernard applied for unemployment-compensation benefits with appellee Ohio Department of Jobs and Family Services ("ODJFS").

{¶ 3} The ODJFS ruled that Bernard was required to have earned an average weekly wage of at least $213 for the relevant 20 weeks to be eligible for unemployment compensation and that the amounts that went into the flexible-spending account were not "remuneration" as that term is used in R.C. 4141.01(R)(1). With the exclusion of those amounts, Bernard's average weekly wage was only $125, and so her claim was denied on the grounds of insufficient earnings to qualify for unemployment-compensation benefits.

{¶ 4} Bernard appealed the decision of the ODJFS to the Unemployment Compensation Review Commission, contending that the definition of "remuneration" under R.C. 4141.01(H)(1)(a) includes all annual earnings for purposes of determining unemployment-compensation eligibility.

{¶ 5} The commission affirmed the ODFJS decision that pursuant to R.C. 4141.01(R), Bernard did not qualify for unemployment-compensation benefits, because she did not earn an average weekly wage of at least $213 for the required 20 qualifying weeks. It found that Bernard's total wages for the base period of January 2009 through December 31, 2009, were only $6,520, because the $900 per month that had been deposited in a flexible-spending account were not considered wages.

{¶ 6} Bernard filed an appeal with the Court of Common Pleas of Miami County, asserting that the commission's decision should be overturned because it

was "unlawful, unreasonable, or against the manifest weight of the evidence." She claimed that R.C. 4141.46 entitles her to the benefit of the doubt on which benefits are included as wages because the statutes defining "wages" are ambiguous. The court of common pleas upheld the decision of the commission as reasonable and appropriate.

**{¶ 7}** By a vote of two to one, a panel of the Second District Court of Appeals affirmed the judgment of the trial court, deferring to the agency's interpretation of the state and federal statutes at issue. 2012-Ohio-958, ¶ 12. The dissenting judge would have accepted Bernard's definition of "wages" as controlling, applying R.C. 4141.46. *Id.* at ¶ 19.

## II. Argument

**{¶ 8}** We accepted this discretionary appeal on a single proposition of law: "Courts must interpret statutes and regulations with deference to the affected party and against the state agency charged with enforcement of the statutory/regulatory scheme."

*Standard of Review*

**{¶ 9}** Because the proposition of law involves a question of law, we review the court of appeals' judgment de novo. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.,* 63 Ohio St.3d 339, 587 N.E.2d 835 (1992), paragraph one of the syllabus. Specifically, with respect to review of an administrative ruling, "[i]f the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission." R.C. 4141.282(H). This standard of review applies to all appellate courts. *Irvine v. Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18, 482 N.E.2d 587 (1985).

**{¶ 10}** Basically, Bernard argues that deference is not owed to the agency in its interpretation of law. She argues that there is ambiguity in R.C.

4141.01(H)(1), which defines "remuneration," a word that appears in R.C. 4141.01(R)(1), which sets forth when an application for unemployment-compensation benefits is valid. She contends that the decision denying her benefits was "unlawful, unreasonable, or against the manifest weight of the evidence" because R.C. 4141.46 "requires that the Unemployment Compensation Act be *liberally construed in favor of awarding benefits*." (Emphasis sic.)

{¶ 11} Bernard misstates the statute by adding the words "in favor of awarding benefits." R.C. 4141.46 merely states that "Sections 4141.01 to 4141.46, inclusive, of the Revised Code shall be liberally construed." In Bernard's view, under a liberal construction of R.C. 4141.01(H)(1)(a), she earned remuneration in excess of the statutorily required average weekly wage for the qualifying period, even though a portion was placed into a medical flexible-spending account. She asks us to defer to her interpretation of the statutory language.

{¶ 12} But we have never read R.C. 4141.46 to say that courts must interpret statutes and regulations with deference to the interpretation of the affected party and against the interpretation of the state agency charged with enforcement of the statutory/regulatory scheme. Instead, we have explained that "courts * * * must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of implementing the legislative command." *Swallow v. Indus. Comm.,* 36 Ohio St.3d 55, 57, 521 N.E.2d 778 (1988). Accepting Bernard's proposition would lead to an outcome-determinative approach: the agency's position would be entitled to be upheld only in cases in which the ruling favored the employee. Yet we have held that deference is owed no matter which way the agency rules. We must accordingly defer to the commission's interpretation, so long as the interpretation is

reasonable. *See State ex rel. McLean v. Indus. Comm.*, 25 Ohio St.3d 90, 92-93, 495 N.E.2d 370 (1986).

*Statutory Language in Dispute: 26 U.S.C. 3306(b)(5)(G)*

**{¶ 13}** Whether the amounts deposited into Bernard's flexible-spending account should be included as remuneration in determining whether she is eligible for unemployment compensation is not a question with a simple, plain, or clear answer; the statutes do contain ambiguity. A statute is ambiguous when its language is subject to more than one reasonable interpretation. *Clark v. Scarpelli,* 91 Ohio St.3d 271, 274, 744 N.E.2d 719 (2001).

**{¶ 14}** Bernard's application for unemployment-compensation benefits was valid if (1) she was unemployed, (2) she had been employed for at least 20 qualifying weeks during her base period, and (3) she had earned or been paid remuneration at an average weekly remuneration of not less than 27.5 percent of the statewide average weekly wage for those weeks. R.C. 4141.01(R)(1).

**{¶ 15}** "Remuneration" means "all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash." R.C. 4141.01(H)(1). But the statutory definition of "remuneration" excludes 15 specified payments listed in R.C. 4141.01(H)(1)(a). These exclusions are defined further by the federal-unemployment-tax portion of the Internal Revenue Code at 26 U.S.C. 3306(b)(2) through (b)(16). R.C. 4141.01(H)(1)(a). One of those exclusions relates to cafeteria plans. The relevant subsection of 26 U.S.C. 3306 provides:

> **(b) Wages**.—For purposes of this chapter, the term "wages" means all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash; *except that such term shall not include—*
> * * *

**(5)** *any payment made to*, or on behalf of, *an employee* or his beneficiary—

* * *

**(G)** under a cafeteria plan (within the meaning of section 125) *if such payment would not be treated as wages without regard to such plan and it is reasonable to believe that (if section 125 applied for purposes of this section) section 125 would not treat any wages as constructively received* * * *.

(Emphasis added.) Thus, the term "wages" excludes payments made to an employee "under" a cafeteria plan (1) "if such payment would not be treated as wages without regard to such plan" and (2) "section 125 would not treat any wages as constructively received."

{¶ 16} The portion of 26 U.S.C. 3306(b)(5)(G) emphasized above is subject to more than one interpretation, for even the ODJFS and the majority of the judges on the court of appeals' panel in this case interpret the statutory language differently. They do agree on one point—that both conditions mentioned in 26 U.S.C. 3306(b)(5)(G) are fulfilled and that the amount that was placed into the tax-free flexible-spending account was not "remuneration" as that term is used in R.C. 4141.01(R)(1).

{¶ 17} The parties here agree that the amount that was placed in the flexible-spending account within the cafeteria plan was not included in Bernard's gross income, and they do not dispute that the second criterion is fulfilled, i.e., there was no constructive receipt of wages. But Bernard states that the first criterion, that "payment would not be treated as wages without regard to" the plan, is not satisfied. In her view, the amount received from her employer that she voluntarily contributed to her medical flexible-spending account would be treated

as wages *but for* the plan. The problem thus becomes that the Ohio Revised Code relies on the Internal Revenue Code to flesh out its definition of remuneration.

{¶ 18} But the court of appeals' majority opinion observes that any payment made to Bernard under the cafeteria plan was made from the plan to the employee and would be in the nature of a reimbursement to her for her medical expenses rather than wages and so " 'such payment would not be treated as wages without regard to such plan.' " 2012-Ohio-958, ¶ 8, quoting 26 U.S.C. 3306(b)(5)(G).

{¶ 19} The ODJFS sets forth its own explanation of the disputed language and first notes that "a payment 'under a cafeteria plan' is not automatically excludable or includable [from wages] merely because it is in a cafeteria plan." A cafeteria plan is a fringe benefit that allows an employee to choose between cash (or equivalents) and "qualified" benefits (i.e., those excluded from taxation under another part of the code). *See, e.g.,* I.R.S. Notice 2010-38, 2010-20 Internal Revenue Bulletin 683, available at http://www.irs.gov/pub/irs-irbs/irb10-20.pdf (accessed May 30, 2013). Because there is an option to receive cash, ordinarily the doctrine of constructive receipt would apply to make a cafeteria-plan payment taxable, and that is why the second condition is included in 26 U.S.C. 3306(b)(5)(G).

{¶ 20} With respect to the first condition, the ODJFS explains that a health-care flexible-spending arrangement is a type of insurance plan excluded from gross income under 26 U.S.C. 105(b) without regard to whether it is part of a cafeteria plan. *See, e.g.,* I.R.S. Notice 2004-50, 2004-33 Internal Revenue Bulletin 205, available at http://www.irs.gov/pub/irs-irbs/irb04-33.pdf (accessed May 30, 2013) (flexible-spending-arrangement regulations "are generally imposed so that health [flexible-spending arrangements] operate in a manner similar to 'insurance-type' accident or health plans under [26 U.S.C.] 105"); Adam Chodorow, *Charitable FSAs: A Proposal to Combine Healthcare and*

*Charitable Giving Tax Provisions,* 2011 B.Y.U.L.Rev. 1041, 1050 (2011) ("to the IRS, [health-care flexible-spending accounts] are a form of employer-provided health insurance"). Thus, the language in 26 U.S.C. 3306(b)(5)(G) that payments "under a cafeteria plan" are not wages if the payment would not be treated as wages "without regard" to the plan simply reiterates that the taxable status of a benefit does not change merely because it is within a cafeteria plan.

{¶ 21} Regardless of the varying interpretations, we are to consider whether the commission's interpretation is reasonable. R.C. 4141.282(H) sets forth a highly deferential standard, and this court will not reject a decision of the commission that is lawful and reasonable. *Lang v. Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, 982 N.E.2d 636, ¶ 16. The trial judge in this matter succinctly stated the reasonableness of the commission's interpretation of "remuneration" for unemployment-compensation-eligibility purposes:

> As noted by the appellee, the entire Unemployment Compensation Act is funded by an excise tax on employers. This is based upon the gross wages paid to employees each quarter. To be a viable safety net for eligible workers, the Act needs to maintain a stream of income consistent with its obligations to pay. To that end, the legislature has defined wages to mean remuneration paid to an employee * * *.

> The legislature defined remuneration to mean all compensation for personal services * * * provided that remuneration does not include: (a) payments as provided in divisions (b)(2) to (b)16 of Section 3306 of the Federal Unemployment Tax Act, 84 Stat. 703, 26 U.S.C.A. 3301 to 3311 as amended.

Section 3306 states that wages do not include payments under a cafeteria plan if the payments are not treated as wages.

For purposes of the excise tax payable by the employer, Health [flexible-spending account] diversions are not considered wages.

When one realizes the appellant wanted the money directed in this fashion, and both she and the employer benefitted from not having to report the money as a wage under box 1 of her W-2 form, the appellee's interpretation of not considering the $10,800.00 as wages for unemployment purposes seems quite reasonable.

(Footnotes omitted.)

**{¶ 22}** We agree.

### III.  Conclusion

**{¶ 23}** The ODJFS determined that earnings that an employee elects to deposit into a tax-free flexible-spending account to obtain reimbursement of medical costs under an employer's cafeteria plan do not qualify as remuneration for determining the employee's unemployment-compensation eligibility.  Because the ODJFS's interpretation of R.C. 4141.01(H)(1)(a) is both lawful and reasonable, we affirm the judgment of the Second District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH, J., concur.

O'DONNELL and KENNEDY, JJ., concur in judgment and concur separately.

PFEIFER, J., dissents.

O'NEILL, J., dissents without opinion.

_____

**KENNEDY, J., concurring.**

**{¶ 24}** I concur in the majority's judgment. I write separately because I agree with appellee Ohio Department of Job and Family Services that R.C. 4141.01(H)(1)(a) and the related statutes, which define and determine taxable remuneration, are not ambiguous. Because deference to an agency's interpretation of a statute is not necessary when applying an unambiguous statute, I would affirm the judgment of the appellate court by applying the statutes as written, and I would not address R.C. 4141.46 or other laws that guide our interpretation of ambiguous statutes.

Legal Analysis

Our first duty in statutory interpretation is to determine whether the statute is clear and unambiguous. *Sherwin-Williams Co. v. Dayton Freight Lines, Inc.,* 112 Ohio St.3d 52, 2006-Ohio-6498, 858 N.E.2d 324, ¶ 15. " '[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written * * *.' " *Id.* at ¶ 14, quoting *Hubbard v. Canton City School Bd. of Edn.,* 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 14.

*Estate of Heintzelman v. Air Experts, Inc.*, 126 Ohio St.3d 138, 2010-Ohio-3264, 931 N.E.2d 548, ¶ 15. The legal analysis of the relevant statutes requires a multilayered approach, but it reveals no ambiguity in the statutes. Therefore, the statutes should be enforced like any other statutes.

**{¶ 25}** The analysis begins with the definitional section of the Unemployment Compensation Act, R.C. 4141.01, defining "benefit year" as follows:

(R)(1) * * * Any application for determination of benefit rights made in accordance with section 4141.28 of the Revised Code is valid if the individual filing such application is unemployed, has been employed by an employer or employers subject to this chapter in at least twenty qualifying weeks within the individual's base period, and has earned or been paid *remuneration* at an average weekly wage of not less than twenty-seven and one-half per cent of the statewide average weekly wage for such weeks.

(Emphasis added.)

{¶ 26} "Remuneration" is defined in R.C. 4141.01(H)(1) and provides:

"Remuneration" means all compensation for personal services, including commissions and bonuses and the cash value of all compensation * * *. * * *

* * * *"[R]emuneration" does not include:*

*(a) Payments as provided in divisions (b)(2) to (b)(16) of section 3306 of the "Federal Unemployment Tax Act," 84 Stat. 713, 26 U.S.C.A. 3301 to 3311, as amended.*

(Emphasis added.)

{¶ 27} Under a plain reading of R.C. 4141.01(H)(1), then, "remuneration," for purposes of determining eligibility under the unemployment-compensation statutes, includes all compensation for personal services, but excludes any compensation paid under 26 U.S.C. 3306(b)(2) to (b)(16).

{¶ 28} Title 26 of the United States Code is the Internal Revenue Code. 26 U.S.C. 3306, entitled "Definitions," provides:

**(b) Wages.**—For purposes of this chapter, the term "wages" means all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash; *except that such term shall not include—*

\* \* \*

**(5)** *any payment made to, or on behalf of, an employee or his beneficiary—*

\* \* \*

**(G)** *under a cafeteria plan (within the meaning of section 125)* if such payment would not be treated as wages without regard to such plan and it is reasonable to believe that (if section 125 applied for purposes of this section) *section 125 would not treat any wages as constructively received* \* \* \*.

(Emphasis added.)

{¶ 29} Therefore, under a plain reading of 26 U.S.C. 3306(b)(5)(G), "wages," for purposes of the Internal Revenue Code, means all remuneration, but excludes any payment under a cafeteria plan if 26 U.S.C. 125 does not treat the payment as wages or as wages constructively received.

{¶ 30} 26 U.S.C. 125 is entitled "Cafeteria plans" and provides:

**(a) In general.**—Except as provided in subsection (b) [exception for highly compensated participants and key employees], no amount shall be included in the gross income of a participant in a cafeteria plan solely because, under the plan, the participant may choose among the benefits of the plan.

\* \* \*

>     **(d) Cafeteria plan defined.**—For purposes of this
> section—
>
>     **(1) In general.** The term "cafeteria plan" means a written
> plan under which—
>
>     **(A)** all participants are employees, and
>
>     **(B)** the participants may choose among 2 or more benefits
> consisting of cash and qualified benefits.
>
>     * * *
>
>     **(f) Qualified benefits defined.**—For purposes of this
> section, the term "qualified benefit" means any benefit which, with
> the application of subsection (a), is not includible in the gross
> income of the employee by reason of an express provision of this
> chapter (other than section 106(b), 117, 127, or 132).

**{¶ 31}** Therefore, under a plain reading of 26 U.S.C. 125, contributions to a qualified cafeteria plan may be excluded from gross income. To qualify as a cafeteria plan, the plan must be in writing, cover only employees, and permit the employees to choose from two or more benefits consisting of cash and qualified benefits. A "qualified benefit" is not included as income if there is an express provision in the Internal Revenue Code exempting it. 26 U.S.C. 105 specifically exempts the money placed in the flexible spending account ("FSA") in this case.

**{¶ 32}** 26 U.S.C. 105, entitled "Amounts received under accident and health plans," provides:

>     **(a) Amounts attributable to employer contributions.**—
> Except as otherwise provided in this section, amounts received by
> an employee through accident or health insurance for personal
> injuries or sickness shall be included in gross income to the extent

such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

**(b) Amounts expended for medical care.**—Except in the case of amounts attributable to * * * deductions allowed under section 213 * * * *gross income does not include amounts referred to in subsection (a) if such amounts are paid, directly or indirectly, to the taxpayer to reimburse the taxpayer for expenses incurred by him for the medical care (as defined in section 213(d)) of the taxpayer, his spouse, [and/or] his dependents * * *.*

(Emphasis added.)

{¶ 33} Therefore, the Internal Revenue Code does not include in gross income amounts paid for qualifying 26 U.S.C. 213(d) medical expenses.

{¶ 34} The administrative agencies, the courts, and the parties agree that the amounts paid on behalf of or reimbursements made to Bernard for medical expenses from the FSA are qualifying medical expenses pursuant to 26 U.S.C. 213(d). They also agree that Bernard's FSA was a qualified cafeteria plan, which legally permitted her to direct her employer to divert earnings for future reimbursement for or direct payment of qualifying medical expenses, and that at all relevant times, a provision of the Internal Revenue Code declared that those amounts were not included in gross income.

{¶ 35} The language of R.C. 4141.01(H)(1) is not ambiguous. It defines "remuneration" as all compensation for personal service with the exclusion of all payments made in accordance with 26 U.S.C. 3306(b)(2) to (b)(16). While the Internal Revenue Code is cumbersome, it plainly delineates that amounts diverted into a qualified cafeteria plan to pay qualified medical expenses and amounts paid

14

"directly or indirectly" under a qualified cafeteria plan for qualified medical expenses are not includable as gross income for income-tax purposes.

## Conclusion

{¶ 36} I concur with the majority to affirm the court of appeals. But in my view, R.C. 4141.01(H)(1)(a) and the related state and federal statutes are not ambiguous. Consequently, I would not address R.C. 4141.46 or other laws that guide our interpretation of ambiguous statutes.

O'DONNELL, J., concurs in the foregoing opinion.

_____

**PFEIFER, J., dissenting.**

{¶ 37} After reading the lead opinion's interpretations of the statutes and cases involved in this case, I am left with one overpowering conclusion: this issue is much more complicated than it should be. To me, compensation is compensation. Under this simple approach, Bernard's request for unemployment benefits would be based on her total compensation, not just the portion of her compensation that was taxable.

{¶ 38} We all understand that Bernard allocated some of her remuneration to the cafeteria plan in order to save money on taxes. Many Ohioans make similar decisions every day; nobody wants to pay more taxes than necessary. Bernard might have made a different decision if she had known that her decision would affect her ability to receive unemployment benefits. But how was she to know? No ordinary resident can be expected to understand the interplay between the various state statutes, IRS notices and bulletins, cases, and definitions implicated in this case. As the lead opinion points out, even the court of appeals and the Department of Job and Family Services interpreted the statutes differently.

{¶ 39} This case raises two interesting questions. First, do Ohioans know and approve of the fact that some people earn so little money that they are not covered by unemployment insurance even though their employer pays into the

system?    Second, because Bernard's entire compensation package isn't remuneration, did her employer improperly pay her less than minimum wage?

{¶ 40} I would reverse the decision of the court of appeals.   I would liberally construe "remuneration" to include Bernard's entire compensation package. *See* R.C. 4141.46.  I dissent.

_____

Burton Law, L.L.C., Robert Guehl, Tony M. Alexander, and Brandon Cogswell, for appellant.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, Michael J. Hendershot, Chief Deputy Solicitor, and Rebecca L. Thomas and Robin A. Jarvis, Assistant Attorneys General, for appellee Ohio Department of Job and Family Services.

Rendigs, Fry, Kiely & Dennis, L.L.P., W. Roger Fry, and William H. Fry, for appellee Wakeman Educational Foundation.

_____