MP STAR FINANCIAL, INC., APPELLANT, v. CLEVELAND
STATE UNIVERSITY, APPELLEE.

[Cite as *MP Star Financial, Inc. v. Cleveland State
Univ.*, 107 Ohio St.3d 176, 2005-Ohio-6183.]

(No. 2004–1466—Submitted June 14, 2004—Decided December 7, 2005.)

MOYER, C.J.

{¶ 1} This case requires us to decide whether R.C. 1309.406(A) applies to payments made by an account debtor that is a governmental unit. R.C. 1309.109(D)(14) states, "This chapter does not apply to * * * [a] transfer by a government, state, or governmental unit."

{¶ 2} The complaint alleges that Metro Minority Enterprises, Inc., d.b.a. Metro Temps, and Metro Temps Employment Consultants, Inc. (collectively, "Metro Temps") were in the business of providing employment services. To obtain immediate cash, Metro Temps entered into financing agreements with MP Star Financial, Inc. ("MP Star"). Pursuant to the agreements, Metro Temps, as assignor, transferred accounts receivable to MP Star, as assignee, and MP Star acquired an interest in payment obligations owed by account debtors on the accounts. This arrangement is commonly referred to as "factoring."

{¶ 3} As part of the agreements, Metro Temps agreed to notify account debtors on its accounts to make payments to MP Star. The legal effect of notice is provided in R.C. 1309.406(A): "[A]n account debtor on an account * * * may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor."

{¶ 4} Metro Temps provided employment services to Cleveland State University, defendant-appellee, and created an account receivable by billing the university. Metro Temps then transferred the Cleveland State account to MP Star pursuant to the factoring relationship. The university was notified of the assignment and was told to make payments to MP Star. After Cleveland State paid Metro Temps, MP Star filed a complaint in the Court of Claims asserting that the university had violated the terms of the assignment.

{¶ 5} Cleveland State filed a Civ.R. 12(B)(6) motion to dismiss the action, arguing that the complaint was based on R.C. 1309.406(A) and that because Cleveland State is an institution operated by the state of Ohio, R.C. 1309.406(A) is not applicable, pursuant to R.C. 1309.109(D)(14). The Court of Claims dismissed the action, concluding that R.C. 1309.406(A) does not apply to payments made by an account debtor that is a governmental unit. MP Star appealed to the Tenth District Court of Appeals, which affirmed. The cause is now before this court upon the acceptance of a discretionary appeal.

{¶ 6} The meaning of R.C. 1309.406(A) is not in dispute. The words of that statute clearly state that when an account debtor makes payments to an assignor of an account receivable after the account debtor has received notice of an assignment, the account debtor is still liable to the assignee for the payments made to the assignor. See *First Bank of Marietta v. Roslovic & Partners, Inc.* (1999), 86 Ohio St.3d 116, 712 N.E.2d 703, construing a previous version of the statute.

{¶ 7} R.C. Chapter 1309, Ohio's version of Article 9 of the Uniform Commercial Code ("UCC"), applies to the sales of accounts. R.C. 1309.109(A)(3). We must decide, however, whether R.C. 1309.406(A) applies to the payments made by Cleveland State to Metro Temps in view of R.C. 1309.109(D)(14).

{¶ 8} The issue is whether the payments made by Cleveland State to Metro Temps were transfers within the meaning of R.C. 1309.109(D)(14). "Transfer" is not statutorily defined, and undefined terms are to be accorded their common, everyday meaning. *State v. Dorso* (1983), 4 Ohio St.3d 60, 62, 4 OBR 150, 446 N.E.2d 449; R.C. 1.42. The American Heritage Dictionary (4th Ed.2000) 1832 defines "transfer" as "[t]he conveyance or removal of something from one place, person, or thing to another." Black's Law Dictionary (8th Ed.2004) 1535 defines "transfer" as "[a]ny mode of disposing of or parting with an asset or an interest in an asset, including * * * the payment of money." Both definitions demonstrate that the payment of money by one entity to another is a transfer. And because the language of R.C. 1309.109(D)(14) is clear and unambiguous, we must enforce it as written. *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.* (1979), 58 Ohio St.2d 1, 4, 12 O.O.3d 1, 387 N.E.2d 1222.

{¶ 9} MP Star contends, however, that "transfer" refers only to the transfer of a security interest and that it does not refer to a payment of money. According to that meaning, R.C. 1309.109(D)(14) would exclude the application of R.C. Chapter 1309 when the governmental unit is a borrower but not when the governmental unit is an account debtor. The common meaning of "transfer" does not support that conclusion. Moreover, in R.C. Chapter 1309, the word is used broadly enough to include transfers of money. See R.C. 1309.332. When it wanted a narrower meaning, the General Assembly qualified "transfer" elsewhere

in R.C. Chapter 1309. See R.C. 1309.109(D)(8) ("transfer of an interest in * * * a claim under a policy of insurance"); R.C. 1309.109(D)(11) ("transfer of an interest in * * * real property"); R.C. 1309.406(F) ("transfer of * * * an account or chattel paper"). The qualification of "transfer" in some divisions of R.C. Chapter 1309 intimates the broad meaning of that word in R.C. 1309.109(D)(14). Had the General Assembly intended to make R.C. Chapter 1309 inapplicable to governmental units only when the governmental unit transfers a security interest, it would have done so by adding qualifying language to R.C. 1309.109(D)(14). Accordingly, we hold that pursuant to R.C. 1309.109(D)(14), R.C. 1309.406(A) does not apply to payments made by an account debtor that is a governmental unit.

{¶ 10} MP Star also argues that one of the Official Comments to a former version of UCC Article 9 is dispositive in its favor. See Comment 5 to former UCC 9–104(e) (1972); see former R.C. 1309.04(D), 137 Ohio Laws, Part I, 126, with an exception similar to that in R.C. 1309.109(D)(14). But because the meaning of R.C. 1309.109(D)(14) is clear and unambiguous, we will not attempt to ascertain a meaning different from that on the face of the statute by examining the comments. *Ohio Dental Hygienists Assn. v. Ohio State Dental Bd.* (1986), 21 Ohio St.3d 21, 23, 21 OBR 282, 487 N.E.2d 301; R.C. 1.49.

{¶ 11} For these reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., L.P.A., David M. Cuppage, and Scott D. Simpkins, for appellant.

Jim Petro, Attorney General of Ohio, Douglas R. Cole, State Solicitor, Stephen P. Carney, Senior Deputy Solicitor, and Randall W. Knutti, Assistant Attorney General, for appellee.

Levinson, Arshonsky & Kurtz, L.L.P., and Steven N. Kurtz, urging reversal for amicus curiae, International Factoring Association.