[Cite as *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 2013-Ohio-4505.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Ohio Civil Service Employees Association et al., | : | |
| | : | |
| Plaintiffs-Relators -Appellants, | : | No. 12AP-1064 (C.P.C. No. 12CV-8716) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| State of Ohio c/o Mike DeWine et al., | : | |
| | : | |
| Defendants-Respondents -Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on October 10, 2013

*James E. Melle*, for appellants.

*Michael DeWine*, Attorney General, *Richard N. Coglianese* and *Erin Butcher-Lyden*, for appellees the State of Ohio, Attorney General Mike DeWine, Secretary of State Jon Husted, Auditor David Yost, The Ohio Department of Rehabilitation and Correction and Director Gary Mohr; *Michael DeWine*, Attorney General, and *Pearl M. Chin*, for appellee Governor John Kasich; *Michael DeWine*, Attorney General, and *William J. Cole*, for appellees Ohio Department of Administrative Services and Director Robert Blair.

*Taft Stettinius & Hollister LLP, Charles R. Saxbe, James D. Abrams* and *Celia M. Kilgard*, for appellees Corrections Corporation of America and CCA Western Properties, Inc.

*Buckley King LPA, Robert J. Walter, Thomas I. Blackburn* and *Diem N. Kaelber*, for Amicus Curiae Ohio Association of Public School Employees (OAPSE)/AFSCME Local 4, AFL-CIO, Fraternal Order of Police of Ohio, Incorporated, and American Federation of State, County, Municipal Employees Ohio Counsel 8.

APPEAL from the Franklin County Court of Common Pleas

MCCORMAC, J.

{¶ 1}   Plaintiffs-appellants, Ohio Civil Service Employees Association et al., appeal from a judgment of the Franklin County Court of Common Pleas granting the motion to dismiss of defendants-appellees, State of Ohio c/o Mike DeWine et al. Because the trial court erred in granting the motion to dismiss, we reverse.

## I. Procedural History

{¶ 2}   Plaintiffs filed a complaint on July 9, 2012, alleging 2011 Am.Sub.H.B. No. 153 ("H.B. No. 153") as it related to section 753.10, section 812.20, and R.C. 9.06 violated three provisions of the Ohio Constitution: (1) the one-subject rule contained in Article II, Section 15(D); (2) the joint venture rule in Article VIII, Section 4 both on its face and as applied; and (3) the right to referendum in Article II, Section 1(C) because it stated R.C. 9.06 and section 753.10 as enacted were effective immediately and not subject to referendum.  Plaintiffs additionally alleged H.B. No. 153 in its entirety was unconstitutional because it violated the one-subject rule.  Finally, the individual plaintiffs sought declarations that they were "public employees" as defined in R.C. 4117.01(C).

{¶ 3}   Plaintiffs filed an amended complaint on September 6, 2012, adding additional defendants and arguing that 2012 Am.Sub.S.B. No. 312 also unconstitutionally violated the one-subject rule.  Plaintiffs sought relief in the form of a declaratory judgment, a preliminary and permanent injunction, and a writ of mandamus.

{¶ 4}   Defendants filed a motion to dismiss, on September 7, 2012, arguing: (1) the trial court lacked jurisdiction under Civ.R. 12(B)(1); (2) plaintiffs lacked standing to bring the complaint; and (3) the complaint failed to state a claim upon which relief could be granted under Civ.R. 12(B)(6).  After the parties fully briefed the issues, the trial court, on November 20, 2012, granted defendants' motion to dismiss, finding: (1) the court had jurisdiction over constitutional challenges to H.B. No. 153 but lacked jurisdiction over individual employee rights, including whether named individual plaintiffs were public employees under R.C. 4117.01(C); (2) plaintiffs had standing to pursue their constitutional claims; and (3) plaintiffs failed to state a claim that H.B. No. 153 violated the Ohio Constitution.

## II. Assignments of Error

{¶ 5}   Plaintiffs appeal, assigning two errors:

1. The trial court erred in dismissing Plaintiffs' First Amended Complaint because it stated a claim that:

A. R.C. 9.06 As Amended And R.C. 753.10 [sic] As Enacted In Am. Sub. H. B. No. 153 By The 129th General Assembly Violated Section 15(D), Article II Of The Ohio Constitution And Could Be Severed.

B. H. B. No. 153 Violated Section 15(D), Article II Of The Ohio Constitution Because Of The Many Unrelated Non-Economic Provisions And If Not Found Unconstitutional They Must Be Severed.

C. Section 4, Article VIII Of The Ohio Constitution Was Violated.

D. Section 812.20 Enacted in H. B. 153 Unlawfully Declared R.C. 9.06 And R.C. 753.10 [sic] Exempt From Referendum And Made Them Immediately Effective Thereby Precluding Any Referendum Effort In Violation Of Section 1c, Article II Of The Ohio Constitution.

E. Despite Inaction By The Plaintiffs A Violation Of The Right Of Referendum Could Be Remedied By Severance Of The Offending Provisions.

2. The trial court erred in dismissing Plaintiffs' First Amended Complaint because:

A. Record Evidence Is Required To Decide Whether Challenged Legislation And The Actions Taken Thereunder Are Unconstitutional As Applied And The Court May Not Consider Such Evidence On A Motion To Dismiss.

B. The Court Failed To Rule Whether Section 4, Article VIII Of The Ohio Constitution Was Unconstitutional As Applied And Whether Plaintiffs Alternative Claim That They Were Public Employees As Defined In R.C. 4117.01(C) Stated A Claim Upon Which Relief Could Be Granted.

For ease of discussion, we consolidate and consider plaintiffs' assignments of error out of order.

## III. Constitutional Challenges

{¶ 6}   Appellate review of the dismissal of a complaint under Civ.R. 12(B)(6) is de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

{¶ 7}   "A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint." *Volbers-Klarich v. Middletown Mgt., Inc.,* 125 Ohio St.3d 494, 2010-Ohio-2057, ¶ 11. To dismiss a complaint under Civ.R. 12(B)(6) for failing to state a claim upon which relief can be granted, it must be beyond doubt from the complaint that the plaintiffs can prove no set of facts entitling them to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.,* 42 Ohio St.2d 242 (1975), syllabus, following *Conley v. Gibson,* 355 U.S. 41 (1957). The allegations of the complaint must be construed as true; the allegations and any reasonable inferences drawn from them must be construed in the nonmoving party's favor. *Ohio Bur. of Workers' Comp. v. McKinley,* 130 Ohio St.3d 156, 2011-Ohio-4432, ¶ 12, citing *LeRoy v. Allen, Yurasek & Merklin,* 114 Ohio St.3d 323, 2007-Ohio-3608, ¶ 14.

A. *One-Subject Rule*

{¶ 8}   Ohio Constitution, Article II, Section 15(D) provides: "No bill shall contain more than one subject, which shall be clearly expressed in its title." The one-subject rule exists to prevent the legislature from engaging in logrolling, which "occurs when legislators combine disharmonious proposals in a single bill to consolidate votes and pass provisions that may not have been acceptable to a majority on their own merits." *Riverside v. State,* 190 Ohio App.3d 765, 2010-Ohio-5868, ¶ 36 (10th Dist.), citing *State ex rel. Dix v. Celeste,* 11 Ohio St.3d 141, 142-43 (1984). "The one-subject provision attacks logrolling by disallowing unnatural combinations of provisions in acts, *i.e.,* those dealing with more than one subject, on the theory that the best explanation for the unnatural combination is a tactical one—logrolling." *Dix* at 143.

{¶ 9}   The one-subject rule also operates to prevent the attachment of riders to bills that are " 'so certain of adoption that the rider will secure adoption not on its own merits, but on the measure to which it is attached.' " *Dix* at 143, quoting Ruud, *No Law Shall Embrace More Than One Subject,* 42 Minn.L.Rev. 389, 391 (1958). "The danger of riders is particularly evident when a bill as important and likely of passage as an appropriations bill is at issue." *Simmons-Harris v. Goff,* 86 Ohio St.3d 1, 16 (1999), citing Ruud at 413.

{¶ 10} "The one-subject rule is mandatory." *Riverside* at ¶ 37. *See In re Nowak,* 104 Ohio St.3d 466, 2004-Ohio-6777, ¶ 54 ("Since the one-subject provision is capable of invalidating an enactment, it cannot be considered merely directory in nature.").

However, enforcement of the one-subject provision remains limited by affording the General Assembly "great latitude in enacting comprehensive legislation" and beginning with the presumption that statutes are constitutional. *Dix* at 145. *See Hoover v. Franklin Cty. Bd. of Commrs.*, 19 Ohio St.3d 1, 6 (1985); *State ex rel. Ohio Civ. Serv. Emps. Assn., AFSCME, Local 11, AFL-CIO v. State Emp. Relations Bd.,* 104 Ohio St.3d 122, 2004-Ohio-6363, ¶ 27.

{¶ 11} The constitutionality of an enactment depends "primarily, if not exclusively, on a case-by-case, semantic and contextual analysis." *Dix* at 145. Disunity of subject matter, not the mere aggregation of topics, causes a bill to violate the one-subject rule. *Nowak* at ¶ 59. Where the topics of a bill share a common purpose or relationship, the fact that the bill includes more than one topic is not fatal. *Ohio Civ. Serv. Emps. Assn.* at ¶ 28, citing *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 496 (1999), and *Hoover* at 6. "A manifestly gross and fraudulent violation" of the one-subject rule will cause an enactment to be invalidated. *Nowak* at paragraph one of the syllabus, modifying *Dix* at syllabus.

{¶ 12} H.B. No. 153 provides that its purpose is "to make operating appropriations for the biennium beginning July 1, 2011, and ending June 30, 2013; and to provide authorization and conditions for the operation of programs, including reforms for the efficient and effective operation of state and local government." (Text of Bill, at 11-12.) H.B. No. 153 is over three thousand pages long, containing amendments to over one thousand sections, enacting over two hundred sections, and repealing over one hundred sections. H.B. No. 153 encompasses a variety of topics, some of which potentially having little or no connection with appropriations.

{¶ 13} Whereas plaintiffs challenge the constitutionality of the entire bill, they specifically allege R.C. 9.06 as amended by H.B. N0. 153 and section 753.10 as enacted by H.B. N0. 153 violate the one-subject rule. The amendments to R.C. 9.06 in H.B. N0. 153 contain various provisions effective upon the execution of a contract for the operation and management of a prison, including, but not limited to: subjecting the prison to real property tax, subjecting the gross receipts and income of the prison operator to gross receipt and income taxes of the state and its subdivisions, providing conditions before the contractor may resell or transfer the prison or terminate the contract, and providing that any action asserting R.C. 9.06 or section 753.10 of H.B. N0. 153 violates the Ohio

Constitution must be brought in the Franklin County Court of Common Pleas. Section 753.10 similarly contains provisions effective upon the execution of a prison contract including: requiring the contractor to provide preferential hiring to employees of the Ohio Department of Rehabilitation and Correction, granting an irrevocable right to the state to re-purchase the prison upon specified triggering events, requiring the real estate to be sold as an entire tract and not in parcels, and requiring the proceeds of the sale of a prison be deposited in the state treasury to the credit of the Adult and Juvenile Correctional Facilities Bond Retirement Fund.

{¶ 14} Plaintiffs contend an appropriations bill containing statutory changes unrelated to appropriations violates the one-subject rule. Defendants respond that the single subject of appropriations unifies the topics in H.B. N0. 153 and argue that although the Supreme Court of Ohio has provided a limited definition of appropriations for the purposes of the right of referendum, it does not violate the one-subject rule for an appropriations bill to include statutory changes not directly appropriating money. The trial court found the prison privatization provisions were not themselves appropriations, but concluded there was no disunity of subject since prison privatization was a "connected subject to an appropriations bill." (Decision, at 19.)

{¶ 15} An appropriation is "an authorization granted by the general assembly to make expenditures and to incur obligations for specific purposes." R.C. 131.01(F). "[T]he ordinary and common meaning of the phrase 'appropriation bill' is a 'measure before a legislative body which authorizes "the expenditure of public moneys and stipulating the amount, manner, and purpose of the various items of expenditure." ' " *State ex rel. LetOhioVote.Org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, ¶ 28, quoting *State ex rel. Akron Edn. Assn. v. Essex*, 47 Ohio St.2d 47, 49 (1976), quoting Webster's New International Dictionary (2d Ed.). Appropriations bills are "different from other Acts of the General Assembly" because they "of necessity, encompass many items, all bound by the thread of appropriations." *Simmons-Harris* at 16. The challenged prison privatization provisions of H.B. N0. 153 "are not themselves appropriations for state expenses because they do not set aside a sum of money for a public purpose" and neither R.C. 9.06 nor section 753.10 as amended by H.B. N0. 153 "makes expenditures or incurs obligations." *LetOhioVote.Org* at ¶ 29.

{¶ 16} In *State ex rel. Ohio AFL-CIO v. Voinovich*, 69 Ohio St.3d 225 (1994), the court addressed whether a bill violated the one-subject rule by making structural changes to the Industrial Commission of Ohio and Ohio Bureau of Workers' Compensation, appropriating funds for those administrative bodies, altering workers' compensation claims procedures, creating an employment intentional tort, and creating a child labor exception for the entertainment industry. *Id.* at 225-26. The court rejected the claim that the appropriation provision of the bill violated the one-subject rule, finding the inclusion of the appropriation was " 'simply the means by which the act is carried out, and the inclusion of such an appropriation does not destroy the singleness of the subject.' " *Id.* at 229, quoting *Dix* at 146. Nevertheless, the court severed the intentional tort and child labor provisions from the bill, finding a violation of the one-subject rule because the provisions "cannot be related to the common purpose of the bill." *Id.* at 230.

{¶ 17} In *Simmons-Harris*, the court examined provisions establishing the Pilot Project Scholarship Program, commonly known as the "School Voucher Program," included within a biennial appropriations bill. *Id.* at 1, 4. Because the school voucher program was a "significant, substantive program" comprising "only ten pages" of an appropriations bill totaling "over one thousand pages," the court found the program was "in essence little more than a rider attached to an appropriations bill." *Id.* at 16. Although the bill appropriated funds for the school voucher program, the court found the "creation of a substantive program in a general appropriations bill violates the one-subject rule." *Id.* at 17.

{¶ 18} In *Ohio Civ. Serv. Employees Assn.*, the court concluded the inclusion of a provision excluding certain employees from the collective bargaining process in a bill that was "loosely described as an appropriations bill" violated the one-subject rule. *Id.* at ¶ 32. The court rejected the contention that the single subject of appropriations bound the budget-related items and the exclusion of employees from the collective bargaining process, finding such a proposition "stretch[ed] the one-subject concept to the point of breaking." *Id.* at ¶ 33. Because the record did not contain an explanation for how the exclusion of Ohio School Facilities Commission employees from the collective bargaining process would "clarify or alter the appropriation of state funds," the court determined the challenged provision lacked a "common purpose or relationship" with the budget-related items in the appropriations bill. *Id.* at ¶ 34.

{¶ 19} Here, although the trial court noted "some parallels" between *Simmons-Harris* and the instant matter, it declined to find *Simmons-Harris* controlling with regard to the prison privatization aspects of H.B. NO. 153. (R. 182-83; Decision, at 17.) Instead, the court applied *State ex rel. Ohio Roundtable v. Taft*, 10th Dist. No. 02AP-911, 2003-Ohio-3340, concluding that H.B. NO. 153 did not violate the one-subject rule. In *Ohio Roundtable*, we found the inclusion in a "budget correction" bill of a provision authorizing the governor to enter into an agreement to operate statewide joint lottery games did not violate the one-subject rule. *Id.* at ¶ 17-18. In conducting a contextual analysis of the bill's history, we discussed the bill's "long and frequently amended history," noting that "[t]he state's financial situation worsened during the pendency of the bill, and it quickly became a vehicle for various other revenue and expenditure adjustments." *Id.* at ¶ 48. Because the lottery provisions were expected to generate a stream of revenue allocated to the funding of Ohio schools, the bill was "sufficiently related to the core subject of revenues and expenditures to justify inclusion in an appropriations bill" and therefore did not violate the one-subject rule. *Id.* at 50-51, citing *ComTech Sys., Inc. v. Limbach*, 59 Ohio St.3d 96 (1991).

{¶ 20} Following *Ohio Roundtable*, the Supreme Court of Ohio expressly rejected the "notion that a provision that impacts the state budget, even if only slightly, may be lawfully included in an appropriations bill merely because other provisions in the bill also impact the budget." *Ohio Civ. Serv. Emps. Assn.* at ¶ 33. Here, the subject of the various provisions in section 753.10 does not concern the acquisition of a revenue stream, but, instead, the contractual requirements for prison privatization. Because the record lacks guidance regarding the way in which the challenged provisions "will clarify or alter the appropriation of state funds," there appears to be no common purpose or relationship between the budget-related items in H.B. NO. 153 and the prison privatization provisions. *Ohio Civ. Serv. Emps. Assn.* at ¶ 34. Although the sale of state prisons no doubt impacts the state budget in some fashion, allowing them to lawfully be included in an appropriations bill would "render[] the one-subject rule meaningless in the context of appropriations bills because virtually any statute arguably impacts the state budget, even if only tenuously." *Id.* at ¶ 33. *See also State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 499 (1999) (explaining that "[t]here comes a point past

which a denominated subject becomes so strained in its effort to cohere diverse matter as to lose its legitimacy as such").

{¶ 21} Recognizing that appropriations bills as a matter of course tie disparate topics together, the bill's provisions must nevertheless meet the test of an appropriation. A bill may " 'establish an agency, set out the regulatory program, and make an appropriation for the agency without violating the one-subject rule,' " but a general appropriations bill cannot constitutionally establish a substantive program related to the subject of appropriations only insofar as it impacts the budget. *Ohio AFL-CIO* at 229, quoting Rudd at 441; *see Ohio Civ. Serv. Emps. Assn.* at ¶ 33; *Simmons-Harris* at 17;. The prison privatization provisions contained in R.C. 9.06 and section 753.10 are significant and substantive. However, given that such provisions amount to approximately twenty of over three thousand pages in H.B. N0. 153, they are "in essence little more than a rider attached to an appropriations bill." *Simmons-Harris* at 16.

{¶ 22} Other factors to consider in determining whether disunity exists between provisions of a bill include whether the challenged provisions are "inherently controversial" or "of significant constitutional importance." *Simmons-Harris* at 16. Arguably, the provisions in H.B. N0. 153 authorizing the sale of several state prisons are similarly expansive in scope to the school voucher program rendered unconstitutional in *Simmons-Harris* and more expansive than the collective bargaining amendment in *Ohio Civ. Serv. Emps. Assn. See Ohio Civ. Serv. Emps. Assn* at ¶ 35. Indeed, the importance of the prison privatization provisions "to those affected by it, however few, cannot be doubted." *Id.* Finally, no rational reason for the combination of the prison privatization provisions and the budget-related appropriations exists in the record, suggesting that the combination was for tactical reasons. *See Simmons-Harris* at 16-17, citing *Dix* at 145.

{¶ 23} Beyond the two sections relating to the privatization of prisons, plaintiffs assert other provisions in H.B. N0. 153 violate the one-subject rule. The trial court, while noting that "a number of provisions of H.B. 153, as cited by Plaintiffs, 'appear' to clearly be at odds with the Single Subject Rule," declined to address those provisions, stating "[w]hether the other sections of H.B. 153 that are cited by Plaintiffs are actually in violation of the Single Subject Rule does not affect the outcome regarding the prison privatization portions of this bill (which is what Plaintiffs' action is really about)." (Decision, at 19.) Plaintiffs' amended complaint, however, claimed the entire bill was

unconstitutional and, as the trial court noted, listed several examples of provisions they alleged were violative of the one-subject rule. At the very least, the amended complaint thereby complied with the notice-pleading requirements in Civ.R. 8(A). *See Smith v. Kamberling*, 10th Dist. No. 12AP-693, 2013-Ohio-1211, ¶ 8-9; *Ford v. Brooks*, 10th Dist. No. 11AP-664, 2012-Ohio-943, ¶ 13.

{¶ 24} Because plaintiffs alleged a set of facts that if proved would entitle them to relief, the trial court erred in granting defendants' motion to dismiss the complaint for failing to state a claim upon which relief can be granted. *Hoover* at 6-7. Therefore, the trial court must continue proceedings consistent with this decision, including holding an evidentiary hearing to determine whether the bill in question had only one subject pursuant to Ohio Constitution, Article II, Section 15(D). *Id.* If, after holding an evidentiary hearing, the trial court finds any provisions constitute a manifestly gross or fraudulent violation of the one-subject rule, such that the provisions bear no common purpose or relationship with the budget-related items and give rise to an inference of logrolling, the court must sever the offending provisions. *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections*, 62 Ohio St.3d 145, 149 (1991) (concluding severance to be the appropriate remedy where possible to cure the defect and save those sections relating to a single subject). *See also Ohio Civ. Serv. Emps. Assn.* at ¶ 36.

B. *Right of Referendum*

{¶ 25} Ohio Constitution, Article II, Section 1 provides in pertinent part: "The legislative power of the state shall be vested in a General Assembly consisting of a senate and house of representatives but the people reserve to themselves the power to propose to the General Assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided." The right of referendum "applies to every law passed in this state and provides an important check on actions taken by the government." *State ex rel. Ohio Gen. Assembly v. Brunner*, 115 Ohio St.3d 103, 2007-Ohio-4460, ¶ 9.

{¶ 26} Subject to specified exceptions, laws do not take effect until 90 days after having been filed with the governor and the secretary of state in order to allow for the filing of a petition for referendum. Ohio Constitution, Article II, Section 1(C). *See also Ohio Gen. Assembly* at ¶ 9. Ohio Constitution, Article II, Section 1(D) lists exceptions to the general rule that all laws and sections of laws are subject to referendum, providing in

pertinent part: "Laws providing for tax levies, appropriations for the current expenses of the state government and state institutions, and emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect. * * * The laws mentioned in this section shall not be subject to referendum."

{¶ 27} "The constitutional right of citizens to referendum is of paramount importance." *Ohio Gen. Assembly* at ¶ 8. "The referendum * * * is a means for direct political participation, allowing the people the final decision, amounting to a veto power, over enactments of representative bodies. The practice is designed to 'give citizens a voice on questions of public policy.' " *Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 673 (1976), quoting *James v. Valtierra*, 402 U.S. 137, 141 (1971).

{¶ 28} Plaintiffs contend the trial court erred by dismissing their claim despite finding a violation of the right of referendum. The trial court found R.C. 9.06 and section 753.10 were not exempt from the right of referendum because they failed to meet the listed exceptions in Ohio Constitution, Article II, Section 1(D).  However, the trial court concluded that plaintiffs could not avail themselves of the right of referendum because they admitted they made "no effort to seek, obtain, or file referendum petitions from or with the Secretary of State." (Decision, at 25.)

{¶ 29} As previously noted, R.C. 9.06 as amended by H.B. N0. 153 and section 753.10 as enacted in H.B. No. 153 "are not themselves appropriations for state expenses because they do not set aside a sum of money for a public purpose." *LetOhioVote.Org* at ¶ 29.  Further, nothing "would permit the referendum exception to apply to provisions that, once implemented, raise revenue to provide funds for an appropriation in another part of the act, even if * * * they are 'inextricably tied' or related to each other." *LetOhioVote.Org* at ¶ 35. Because the contested provisions do not fall within the exceptions to the right of referendum, pursuant to *LetOhioVote.Org*, R.C. 9.06 and section 753.10 violate the right of referendum.

{¶ 30} Defendants do not contest that R.C. 9.06 and section 753.10 violate the right of referendum, but continue to argue that plaintiffs' failure to file a referendum petition with the secretary of state within 90 days of the effective date of H.B. No. 153 is fatal to their claim. In support of this contention, defendants cite to *State ex rel. Ohioans for Fair Dists. v. Husted*, 130 Ohio St.3d 240, 2011-Ohio-5333, for the proposition that a

referendum petition must be timely filed within 90 days from the date the governor filed the bill in the office of the secretary of state.

{¶ 31} Here, because the record does not reflect that plaintiffs timely filed a petition for referendum or made any attempt to exercise such right, it was within the trial court's discretion to determine that they forfeited the right to referendum pursuant to *Ohioans for Fair Dists. Id.* at ¶ 1. Unlike *LetOhioVote.Org*, wherein the court granted an extension of time for the plaintiffs to file a referendum petition with the office of the secretary of state after the office rejected their first timely attempt to file, plaintiffs, in the present matter, admit they made no effort to file a referendum petition. In reaching this conclusion, we recognize that the filing of a referendum petition constitutes a significant investment of time and money. However, such obstacles, especially in consideration of plaintiffs' absence of action during the pendency of the present action, do not remove the requirement that a petition for referendum be timely filed before seeking relief for a violation of the right of referendum.

{¶ 32} Accordingly, the trial court did not err in dismissing plaintiffs' complaint as it related to the violation of the right of referendum in Ohio Constitution, Article II, Section 1(C).

C. *Joint Venture*

{¶ 33} Ohio Constitution, Article VIII, Section 4 provides, in pertinent part: "The credit of the state shall not, in any manner, be given or loaned to, or in aid of, any individual association or corporation whatever; nor shall the state ever hereafter become a joint owner, or stockholder, in any company or association in this state, or elsewhere, formed for any purpose whatever."

{¶ 34} A joint venture is " 'an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers.' " *Al Johnson Constr. Co. v. Kosydar*, 42 Ohio St.2d 29 (1975), paragraph one of the syllabus, quoting *Ford v. McCue*, 163 Ohio St. 498 (1955), paragraph one of the syllabus. The state, in compliance with Article VIII, cannot act as "the owner of part of a property which is

owned and controlled in part by a corporation or individual." *Alter v. Cincinnati*, 56 Ohio St. 47 (1897).

{¶ 35} However, Article VIII does not forbid all collaboration between the state and private enterprises. *See Grendell v. Ohio Environmental Portection Agency,* 146 Ohio App.3d 1, 10-11 (9th Dist.2001). "[T]he appropriation of public money to a private corporation to be expended for a public purpose is a valid act of the legislative body." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 151 (1955). *See also State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, ¶ 67; *Cincinnati v. Dexter*, 55 Ohio St. 93 (1896) ("A sale made in good faith, and for a fair value, under such circumstances, cannot properly be characterized as a loan of the credit of the municipality, directly or indirectly, to or in aid of the purchaser."); *State ex rel. Campbell v. Cincinnati St. Ry. Co.*, 97 Ohio St. 283, 309 (1918) (holding that a city "has the right to contract with the railway company for the operation thereof" and "has also the right to provide in the contract for the payment of all expenses of operation, depreciation, maintenance, etc., out of the gross proceeds received from all sources of operation of the road, under such terms and conditions as the city and its duly authorized officers and boards may deem to be for its best interests").

{¶ 36} Plaintiffs assert both a facial challenge and a challenge to the application of R.C. 9.06 and section 753.10. "To prevail on a facial constitutional challenge, the challenger must prove the constitutional defect, using the highest standard of proof, which is also used in criminal cases, proof beyond a reasonable doubt." *Ohio Congress of Parents & Teachers* at ¶ 21, citing *Dickman*, paragraph one of the syllabus. "To prevail on a constitutional challenge to the statute as applied, the challenger must present clear and convincing evidence of the statute's constitutional defect." *Ohio Congress of Parents & Teachers* at ¶ 21, citing *Belden v. Union Cent. Life Ins. Co.*, 143 Ohio St. 329 (1944), paragraph six of the syllabus.

{¶ 37} Plaintiffs contend the payment of an annual ownership fee, the reservation of a right to repurchase the prisons, and the various regulatory provisions governing operation of the privatized prisons cause R.C. 9.06 and section 753.10 to violate the prohibition on joint ventures and also unconstitutionally extend the state's credit to a private enterprise. Defendants respond that the sale of a public facility, authorized by the

legislature and made in good faith and for fair-market value, is constitutional and cannot be characterized as a loan.

{¶ 38} Here, nothing in plaintiffs' complaint demonstrates that the challenged provisions result in the sort of partnerships or unions that the Ohio Constitution forbids. The state retains no ownership interest in the facilities to be privatized because the challenged provisions authorize the sale of the property as an entire tract by quit-claim deed. *Compare State ex rel. Eichenberger v. Neff*, 42 Ohio App.2d 69, 75 (10th Dist.1974) (finding an arrangement wherein "the land of the state is joined by the improvements of the lessee under the lease" violated Ohio Constitution, Article VIII, Section 4). Under the challenged sections, the state and private entities do not possess " 'equal authority or right to direct and govern the movements and conduct of each other.' " *Grendell* at 11, quoting *Ford* at 502-03. Plaintiffs point to no authority for the proposition that a contractual right to repurchase the property violates Ohio Constitution, Article VIII, Section 4. Finally, payment of the annual ownership fee by the state to the prison operators does not violate Article VIII, Section 4 because the Ohio Constitution " 'does not forbid the employment of corporations, or individuals, associate or otherwise, as agents to perform public services; nor does it prescribe the mode of their compensation.' " *Grendell* at 12, quoting *Taylor v. Ross Cty. Commrs.*, 23 Ohio St. 22, 78 (1872).

{¶ 39} Even accepting all of the allegations in the complaint as true and making all reasonable inferences in favor of plaintiffs, no set of facts in plaintiffs' complaint, if proven, would entitle them to relief. *See Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 193 (1988) (finding a court need not presume the truth of conclusions unsupported by factual allegations); *Pepper v. Bd. of Edn. of Toledo Pub. Schools*, 6th Dist. No. L-06-1199, 2007-Ohio-203, ¶ 13, 18. Accordingly, the trial court did not err in dismissing plaintiffs' complaint with regard to the allegations of a violation of Ohio Constitution, Article VIII, Section 4 both on its face and as applied.

{¶ 40} In conclusion, plaintiffs' first assignment of error as it relates to a violation of the one-subject rule is sustained, but as it relates to all other alleged errors is overruled.

### IV. Alternative Claim

{¶ 41} Finally, plaintiffs assert that the trial erred in dismissing their complaint because they stated a claim that the employees working at the Marion prison complex are public employees as defined in R.C. 4117.01(C). Defendants respond that the State

Employment Relations Board ("SERB") has exclusive jurisdiction to determine whether an individual is a public employee as defined in R.C. 4117.01(C) and, as a result, plaintiffs lacked standing to pursue their constitutional and alternative claims.

{¶ 42} Standing is " 'a party's right to make a legal claim or seek judicial enforcement of a duty or right.' " *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27, quoting Black's Law Dictionary (8th Ed.2004) 1442. Unless the party seeking relief establishes standing, a court cannot consider the merits of the party's legal claim. *Ohio Pyro* at ¶ 27; *U.S. Bank Natl. Assn. v. Gray*, 10th Dist. No. 12AP-953, 2013-Ohio-3340, ¶ 17, citing *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 22.

{¶ 43} To establish standing, a plaintiff must have a personal stake in the matter he or she seeks to litigate. *League of United Latin Am. Citizens v. Kasich*, 10th Dist. No. 10AP-639, 2012-Ohio-947, ¶ 21, citing *Tiemann v. Univ. of Cincinnati*, 127 Ohio App.3d 312, 325 (10th Dist.1998). A plaintiff demonstrates his or her personal stake by alleging an actual, palpable injury caused by the defendant that has a remedy in law or equity. *Id.*, citing *Tiemann* at 325. An injury borne by the population in general is not sufficient to confer standing, but must be borne by the plaintiff in particular. *Id.*, citing *Tiemann* at 325, citing *Allen v. Wright*, 468 U.S. 737 (1984). *See also State ex rel. Walgate v. Kasich*, 10th Dist. No. 12AP-548, 2013-Ohio-946, ¶ 16.

{¶ 44} "R.C. Chapter 4117 established a comprehensive framework for the resolution of public-sector labor disputes by creating a series of new rights and setting forth specific procedures and remedies for the vindication of those rights." *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167, 169 (1991). R.C. 4117.12(A) provides that unfair labor practices are "remediable by the state employment relations board as specified in this section," but does not provide for the filing of an original complaint in common pleas court. "Ultimately, the question of who is the 'public employer' must be determined under R.C. Chapter 4117." *Franklin Cty. Law Enforcement Assn.* at 170.

{¶ 45} The trial court found that SERB was the proper jurisdictional vehicle to pursue questions involving public employees, but determined that SERB did not possess the authority to resolve whether the statutes in question were constitutional. The trial court also found that R.C. 9.06(K) conferred jurisdiction as to constitutional questions

regarding the challenged amendments to H.B. N0. 153. As a result, the trial court concluded plaintiffs had standing to bring their claims since the trial court had jurisdiction, plaintiffs alleged a tangible injury in fact, and plaintiffs could not pursue remedies to their constitutional claims in another forum.

{¶ 46} Defendants do not contest that SERB would be unable to address the constitutional claims asserted by the plaintiffs. Instead, defendants assert without reference to authority that R.C. 9.06(K) does not supply the trial court with jurisdiction, but rather is a venue provision. R.C. 9.06(K) as amended in H.B. N0. 153 provides: "Any action asserting that section 9.06 of the Revised Code or section 753.10 of the act in which this amendment was adopted violates any provision of the Ohio constitution . . . shall be brought in the court of common pleas of Franklin county."  We conclude the trial court possessed jurisdiction to decide the constitutional claims raised by plaintiffs.  *See Nibert v. Dept. of Rehab. & Corr.*, 119 Ohio App.3d 431, 433 (10th Dist.1997); *Wandling v. Ohio Dept. of Transp.*, 78 Ohio App.3d 368, 371 (4th Dist.1992).

{¶ 47} Defendants' contention that plaintiffs lacked standing to pursue their constitutional claims is also without merit. Defendants admit that SERB lacks the authority to resolve the constitutional claims asserted in this case, and simultaneously assert that plaintiffs cannot demonstrate an injury sufficient to confer standing because SERB is the only proper forum to address questions involving public employees.

{¶ 48} Here, unlike in *Walgate*, plaintiffs allege a direct, concrete injury different from that suffered by the public in general. *Id.* at ¶ 16. Since it would have been futile for plaintiffs to assert their constitutional claims before SERB, it would be a manifest absurdity to also prevent them from asserting their constitutional claims before the trial court. "Because administrative bodies have no authority to interpret the Constitution, requiring litigants to assert constitutional arguments administratively would be a waste of time and effort for all involved." *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 460-61 (1997). We therefore conclude plaintiffs had standing to pursue their constitutional claims at the trial court.

{¶ 49} Finally, because resolution of plaintiffs' alternative claim depends on interpretation of the scope of "public employer" as defined by R.C. Chapter 4117, the trial court did not err in finding SERB has exclusive jurisdiction over such interpretation and dismissing plaintiffs' complaint as to their alternative claim. *Franklin Cty. Law*

*Enforcement Assn.* at 169; *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 469 (1993). Accordingly, plaintiffs' second assignment of error is overruled.

## V. Motion to Strike

{¶ 50} Plaintiffs filed a motion to strike materials in defendants' merit brief and appendix they allege were not part of the record. As it is unnecessary to rely on the materials plaintiffs seek to strike in order to reach the foregoing conclusions, we overrule as moot plaintiffs' motion to strike. *MP Star Financial, Inc. v. Cleveland State Univ.*, 10th Dist. No. 03AP-1156, 2004-Ohio-3840, ¶ 12, *aff'd*, 107 Ohio St.3d 176, 2005-Ohio-6183.

## VI. Disposition

{¶ 51} Because plaintiffs' complaint sufficiently states a claim that the challenged legislation violates the one-subject rule of the Ohio Constitution, we conclude the trial court erred in granting defendants' motion to dismiss. Plaintiffs' first assignment of error is sustained in part and overruled in part and plaintiffs' second assignment of error is overruled. Plaintiffs' motion to strike is rendered as moot. Accordingly, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand with instructions to continue proceedings.

*Judgment affirmed in part;*
*reversed in part and cause remanded.*

SADLER and CONNOR, JJ., concur.

McCORMAC, J., retired, formerly of the Tenth Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).