[Cite as *Emp.'s Choice Plus, Inc. v. Ohio Dept. of Job & Family Servs.*, 2019-Ohio-4994.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Employer's Choice Plus, Inc. et al., | : | |
| Appellants-Appellants, | : | |
| | : | No. 18AP-297 |
| v. | : | (C.P.C. No. 17CV-664) |
| Ohio Department of Job and Family Services et al., | : | (REGULAR CALENDAR) |
| | : | |
| Appellees-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on December 5, 2019

**On brief:** *Graydon Head & Ritchey LLP, Steven P. Goodin, Anthony R. Robertson*, and *Matthew B. Lake*, for appellants.

**On brief:** *Dave Yost*, Attorney General, and *Eric A. Baum*, for appellee Ohio Department of Job and Family Services.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellants Employer's Choice Plus, Inc. ("Employer's Choice"), Alzey Enterprises I, Inc. ("Alzey"), Employers Risk Management Company, Inc. ("Employers Risk"), J Ross, Inc., J Ross III Management Company, Inc., J Ross IV Management Company, Inc., J Ross V Management Company, Inc., J Ross VI Management Company, Inc., J Ross VII Management, Inc., J Ross VIII, Inc., J Ross XI Corporation, J Ross XII Corporation, and J Ross XIV Corporation (collectively, the "J Ross Companies"), appeal from a judgment of the Franklin County Court of Common Pleas affirming a decision of appellee, Ohio Unemployment Compensation Commission ("commission"). For the reasons that follow, we reverse.

## I. Facts and Procedural History

{¶ 2} In August 2008, appellee, Ohio Department of Job and Family Services ("ODJFS"), issued a letter advising Employer's Choice that pursuant to an investigation it had determined Alzey, Employers Risk, and the J Ross Companies did not meet the definition of employer set forth in R.C. 4141.01(A)(1). ODJFS issued a determination of liability finding Employer's Choice was a liable employer effective January 1, 2002, and a contribution rate determination, setting Employer's Choice's unemployment compensation contribution rate for 2004 through 2008. ODJFS advised Alzey, Employers Risk, and the J Ross Companies that their unemployment compensation accounts had been closed effective July 1, 2004. Appellants requested review and reconsideration of the determination

{¶ 3} The director of ODJFS issued a reconsidered decision in August 2016, modifying the determination of liability and contribution rate determination by finding R.C. 4141.24(F) or (G)(1) applied and applying the appropriate experience rates for Employer's Choice for the years 2004 through 2016 pursuant to those statutory provisions. Appellants appealed the director's reconsidered decision to the commission. In December 2016, a commission hearing officer conducted a hearing on the appeal. Appellants presented testimony from John Cacaro who testified he was the president and sole shareholder of all the appellants. Cacaro testified that Employer's Choice was the parent entity and the other entities were subsidiaries of Employer's Choice, and that he had filed forms with the Internal Revenue Service electing qualified subchapter S subsidiary status for Alzey, Employers Risk, and the J Ross Companies. Cacaro further testified all of the entities used one common bank account for payroll purposes. ODJFS presented testimony from Melanie Heck, an unemployment compensation compliance supervisor who reviewed the audit that led to the liability and compensation rate determination. Heck testified ODJFS considered the election of qualified subchapter S subsidiary status to result in a deemed liquidation of the subsidiary entity into the parent entity.

{¶ 4} Following the hearing, the commission issued a decision affirming the director's reconsidered decision. The commission held that Employer's Choice was a liable employer effective January 1, 2002, and that Alzey, Employers Risk, and the J Ross Companies did not meet the statutory definition of employer contained in R.C. 4141.01(A)(1). The commission reasoned that Employer's Choice was the successor-in-

interest to Alzey, Employers Risk, and the J Ross Companies because the designation of those entities as qualified subchapter S subsidiaries of Employer's Choice resulted in a transfer of all the trade or business of the subsidiaries to Employer's Choice. Appellants appealed the commission's decision to the Franklin County Court of Common Pleas.

{¶ 5} The common pleas court issued a decision affirming the commission's decision. The court held the commission's conclusion that Employer's Choice was the only entity that met the statutory definition of employer was supported by reliable, probative evidence because the other entities were liquidated into Employer's Choice when the qualified subchapter S subsidiary election was made. The court further held the commission's conclusion that Employer's Choice was the successor-in-interest to the other entities was supported by reliable, probative evidence because the same individual was the sole owner, shareholder, and president of all the entities, and each one of them had the same physical address and used the same bank account for payroll purposes.

## II. Assignments of Error

{¶ 6} Appellants appeal and assign the following two assignments of error for our review:

> I. THE TRIAL COURT MISINTERPRETED OHIO LAW IN CONCLUDING THAT EMPLOYER'S CHOICE PLUS, INC. WAS THE ONLY APPELLANT-EMPLOYER UNDER R.C. 4141.01(A)(1).
>
> II. THE TRIAL COURT MISCONSTRUED OHIO LAW IN CONCLUDING THAT EMPLOYER'S CHOICE PLUS, INC. WAS A SUCCESSOR-IN-INTEREST TO EVERY OTHER APPELLANT UNDER R.C. 4141.24(G)(1).

## III. Analysis

{¶ 7} Appellants appealed the commission's decision to the common pleas court, pursuant to R.C. 4141.26(D)(2), which provides that the common pleas court may affirm the commission's determination if, based on consideration of the entire record, it finds the determination is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, the court may reverse, vacate, or modify the determination, or make other such ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 4141.26(D)(2). In resolving evidentiary conflicts, the court must give due deference to the commission's determination

because as the finder of fact it had the opportunity to observe the demeanor of the witnesses and weigh their credibility. *Valentine Contrs., Inc. v Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 15AP-86, 2015-Ohio-5576, ¶ 13.

{¶ 8} On appeal from the common pleas court, our standard of review is more limited. On questions of fact, we consider whether the common pleas court abused its discretion. *Valentine Contrs.* at ¶ 14. "When considering appeals involving questions of successor-in-interest liability, this court has defined 'abuse of discretion' as connoting more than an error in judgment, but implying a decision that is without a reasonable basis and clearly wrong." *All Star Personnel, Inc. v. Unemp. Comp. Rev. Comm.*, 10th Dist. No. 05AP-522, 2006-Ohio-1302, ¶ 13. On questions of law, we exercise de novo review. *Valentine Contrs.* at ¶ 14; *Slats & Nails Pallets, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-690, 2015-Ohio-1238, ¶ 8.

{¶ 9} Ohio employers must contribute to the state Unemployment Compensation Fund. R.C. 4141.09; 4141.23(A). The director must determine each employer's contribution rate which may be a standard rate or an experience based rate. R.C. 4141.25(A).

{¶ 10} In their first assignment of error, appellants assert the common pleas court erred by concluding Employer's Choice was the only entity that qualified as an employer pursuant to R.C. 4141.01(A)(1). That statute sets forth the definition of the term "employer" for purposes of unemployment compensation law. In relevant part, the statute defines an "employer" as follows:

> "Employer" means * * * any individual or type of organization including any partnership, limited liability company, association, trust, estate, joint-stock company, insurance company, or corporation, whether domestic or foreign, * * * who subsequent to December 31, 1971 * * *:
>
> (a) Had in employment at least one individual, * * * in either the current or the preceding calendar year whether or not the same individual was in employment each such day; or
>
> (b) Except for a nonprofit organization, had paid for service in employment wages of fifteen hundred dollars or more in any calendar quarter in either the current or preceding calendar year[.]

R.C. 4141.01(A)(1).

{¶ 11} At the hearing, Cacaro testified Alzey, Employers Risk, and the J Ross Companies were incorporated in Ohio, and that during the relevant time period each of the entities had at least one employee receiving wages of $1,500 or more. The common pleas court alluded to this testimony in its findings of fact stating that "[e]ach Appellant employed at least one employee for all weeks of the years 2006 through 2008, with at least one employee earning quarterly wages of $1500.00 or more." (Mar. 30, 2018 Decision at 4.) Based on this undisputed evidence, and applying the definition of "employer" set forth in R.C. 4141.01(A)(1), the common pleas court abused its discretion by concluding that Alzey, Employers Risk, and the J Ross Companies did not constitute employers under that statutory definition.

{¶ 12} Accordingly, we sustain appellants' first assignment of error.

{¶ 13} In concluding that Alzey, Employers Risk, and the J Ross Companies were not employers under R.C. 4141.01(A)(1), both the commission and the common pleas court relied on a finding that Employer's Choice was the successor in interest to each of those entities. Appellants argue in their second assignment of error the common pleas court erred by concluding Employer's Choice was the successor in interest to the other entities.

{¶ 14} Under certain circumstances, an employer may be deemed to be a successor in interest of another employer for purposes of determining experience and contribution rate. In the present appeal, the director and the commission determined Employer's Choice was the successor in interest to Alzey, Employers Risk, and the J Ross Companies pursuant to R.C. 4141.24(F) or (G)(1). On appeal, the common pleas court concluded Employer's Choice was the successor in interest to the other entities pursuant to R.C. 4141.24(G)(1).

{¶ 15} "Generally, R.C. 4141.24(F) provides two methods by which an employer may qualify as a successor in interest: (1) by operation of law or (2) through voluntary application." *Resource Title Natl. Agency, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-39, 2014-Ohio-3427, ¶ 10. The distinction between these two methods, and the appropriate test to be applied to each, is clearly set forth in the statute:

> If an employer transfers all of its trade or business to another employer or person, the acquiring employer or person shall be the successor in interest to the transferring employer and shall assume the resources and liabilities of such transferring employer's account, and continue the payment of all contributions, or payments in lieu of contributions, due under this chapter.

> If an employer or person acquires substantially all, or a clearly segregable and identifiable portion of an employer's trade or business, then upon the director's approval of a properly completed application for successorship, the employer or person acquiring the trade or business, or portion thereof, shall be the successor in interest. The director by rule may prescribe procedures for effecting transfers of experience as provided for in this section.

R.C. 4141.24(F). ODJFS has promulgated different administrative rules for each method of becoming a successor in interest pursuant to R.C. 4141.24(F). Ohio Adm.Code 4141-17-04 applies in the case of automatic successorship by operation of law under the first part of R.C. 4141.24(F), whereas Ohio Adm.Code 4141-17-03 applies in cases of voluntary successorship under the second part of R.C. 4141.24(F). It is undisputed that Employer's Choice did not apply to be the successor in interest of the other entities. Therefore, the question is whether the commission properly found Employer's Choice to be the successor in interest of the other entities by operation of law pursuant to the first part of R.C. 4141.24(F).

{¶ 16} Alternatively, R.C. 4141.24(G)(1) also addresses the adjustment of unemployment experience following a transfer between two employers that are under common ownership or control:

> If an employer transfers its trade or business, or a portion thereof, to another employer and, at the time of the transfer, both employers are under substantially common ownership, management, or control, then the unemployment experience attributable to the transferred trade or business, or portion thereof, shall be transferred to the employer to whom the business is so transferred. The director shall recalculate the rates of both employers and those rates shall be effective immediately upon the date of the transfer of the trade or business.

{¶ 17} In the present case, the key issue in determining whether Employer's Choice was the successor in interest to the other entities under R.C. 4141.24(F) or (G)(1) is whether the trade or business of Alzey, Employers Risk, and the J Ross Companies was transferred to Employer's Choice. Both the commission and the common pleas court concluded such a transfer occurred when appellants elected for Alzey, Employers Risk, and the J Ross Companies to be treated as qualified subchapter S subsidiary ("QSub") corporations for

purposes of federal tax law. The commission concluded this resulted in a deemed liquidation of the QSub entities into the parent corporation—i.e., Employer's Choice.

{¶ 18} Under federal law, "an S corporation may elect to treat an eligible subsidiary as a QSub" by filing a form prescribed by the Internal Revenue Service. 26 C.F.R. 1.1361-3(a)(2). Federal regulations specify that, with certain exceptions, for federal tax purposes "[a] corporation that is a QSub shall not be treated as a separate corporation" and that "[a]ll assets, liabilities, and items of income, deduction, and credit of a QSub shall be treated as assets, liabilities, and items of income, deduction, and credit of the S Corporation." 26 C.F.R. 1.1361-4(a)(i) and (ii). The regulations further provide that generally, "[i]f an S corporation makes a valid QSub election with respect to a subsidiary, the subsidiary is deemed to have liquidated into the S corporation." 26 C.F.R. 1.1361-4(a)(2)(i). It is undisputed that Cacaro filed the appropriate forms to designate Alzey, Employers Risk, and the J Ross Companies as QSubs of Employer's Choice.

{¶ 19} The commission and the common pleas court effectively concluded the QSub election constituted a transfer of the trade or business of Alzey, Employers Risk, and the J Ross Companies to Employer's Choice. Following this reasoning, the commission then concluded the subsidiaries had transferred all of their trade or business to Employer's Choice, thus making Employer's Choice the successor in interest to those entities pursuant to R.C. 4141.24(F). The commission also cited R.C. 4141.24(G)(1) and found that Employer's Choice, Alzey, Employers Risk, and the J Ross Companies "are all essentially the same company." (Unemp. Comp. Rev. Comm. Decision at 5.) The common pleas court focused on these common ownership, management, or control factors in affirming the commission's decision.

{¶ 20} The key issue is whether the QSub election constituted a transfer of the trade or business of the subsidiaries. The term "transfer" is not defined within R.C. Chapter 4141. In a case involving the question of whether a lease constituted a transfer for purposes of R.C. 4141.24(F) and the associated administrative code provisions, this court considered the meaning of the term:

> The word "transfer" is not statutorily defined with Revised Code Chapter 4141. Undefined terms must be accorded their common, everyday meaning. *MP Star Financial, Inc. v. Cleveland State University*, 107 Ohio St.3d 176, 2005-Ohio-6183, ¶ 8. R.C. 4141.24(F) uses the verb form of the word

transfer, while the Administrative Code provision uses the term in both its verb and noun forms. Black's Law Dictionary (8th Ed.2004) provides two possible definitions for the former: "to convey or remove from one place or one person to another; to pass or hand over from one to another, [especially] *to change over the possession or control of*" and "to sell or give." (Emphasis added.) Likewise, "acquire" means "to gain possession or control of; to get or obtain." *Id.* The noun "transfer" denotes "any mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money, release, *lease*, or creation of a lien or other encumbrance" or "a conveyance of property or title from one person to another." *Id.* (Emphasis added.)

*Jefferson Med. Assocs., L.L.C. v. Unemp. Comp. Rev. Comm.*, 10th Dist. No. 05AP-948, 2006-Ohio-2310, ¶ 17. The court concluded a lease fell within the common meaning of the term transfer.

{¶ 21} Focusing on the noun form of the word transfer, appellee argues that the word has a broad meaning because it includes any method or mode of disposing of or parting with an asset or an interest in an asset. But this argument confuses two different concepts. Although the method or mode of a transfer may encompass a broad range of possibilities, there still must be a conveyance of possession or control of some legal interest in property. Here, the conveyance of possession or control must be a legal interest in a trade or business. That concept is not a broad one.

{¶ 22} The primary rule in statutory construction is to give effect to the legislature's intention by looking at the language of the statute. *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, ¶ 15. When there is no ambiguity, we need only apply the statute. *Id.* Given the common, everyday meaning of the verb form of the word "transfer," we do not find any ambiguity in the express statutory requirement that there be a conveyance of some trade or business from one employer to another to trigger successor-in-interest status under R.C. 4141.24(F) or (G). Although a QSub election may be deemed a liquidation of a subsidiary corporation into the parent for purposes of federal taxation, such election does not effectuate any conveyance of a trade or business under either state or federal law. The fact that federal tax law and Ohio tax law are co-

extensive does not change the express requirements of unambiguous statutes.[1] Without some conveyance of possession or control of a trade or business from one employer to another, there can be no successor-in-interest liability under the express terms of R.C. 4141.24(F) or (G).

{¶ 23} Appellees suggests we must consider whether the commission's interpretation of the federal QSub regulations and their interaction with Ohio unemployment compensation law is entitled to deference. Appellees point us to Supreme Court of Ohio's case law directing that courts " 'must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of implementing the legislative command.' " *Bernard v. Unemp. Comp. Rev. Comm.*, 136 Ohio St.3d 264, 2013-Ohio-3121, ¶ 12, quoting *Swallow v. Indus. Comm.*, 36 Ohio St.3d 55, 57 (1988). *See also Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, ¶ 16 (finding that ODJFS's interpretation of a federal statute was reasonable and entitled to deference given the ambiguity in the federal statute) *compare, e.g., Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

{¶ 24} However, courts grant no deference to an administrative agency's interpretation of a statute when that interpretation conflicts with the express terms of an unambiguous statute. *Lang* at ¶ 12. " 'If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.' " *Id.*, quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). That is the case here.

{¶ 25} Under the circumstances presented in this case, we conclude the common pleas court erred by affirming the commission's determination that a transfer resulted from the election of QSub status for Alzey, Employers Risk, and the J Ross Companies, and that

---

[1] It should also be noted that under the Federal Unemployment Tax Act "[b]usiness entities that are disregarded as separate from their owner, including qualified subchapter S subsidiaries, are required to withhold and pay employment taxes and file employment tax returns using the name and [employer identification number] of the disregarded entity." Internal Revenue Service, 2018 Instructions for Form 940 (Nov. 20, 2018), at 2 https://www.irs.gov/pub/irs-pdf/i940.pdf. Therefore, subchapter S subsidiaries are still viewed as existing, distinct legal entities for purposes of federal unemployment tax law despite their "deemed liquidation" for federal income tax purposes.

Employer's Choice was the successor in interest of those entities for purposes of determining unemployment compensation rates and experience. Accordingly, we sustain appellants' second assignment of error.

**IV. Conclusion**

{¶ 26} For the foregoing reasons, appellants' two assignments of error are sustained and the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this decision.

*Judgment reversed and cause remanded.*

KLATT, P.J., and NELSON, J., concur.

_____